O’Neall J.
In this case the third and last ground is the most important, and will be the first considered.
Iu cases like the present, it is almost impossible to lay down any thing like general rules, applicable to every succeeding case. Every alleged fraud must depend, more or less, upon its attendant circumstances; and what might be a fraud in one case would not amount to it in another. I am not disposed to say that fraud always depends upon the intention of the parties; yet, in most cases, the facts and circumstances which, in contemplation of law, constitute fraud, are resorted to, because they are such as ordinarily indicate the'existence of a fraudulent intention. Still a legal fraud may exist, where the parties intended none; and, in cases like the present, I think it may most usually be found. If one purchases property from another, and leaves it with him, this possession, unexplained, raises a legal presumption of fraud; and still it may be, that one was not intended.
Applicable to this case, we have some general and well defined rules, by which it can be tested. Two of the most usual badges or evidences of a fraudulent sale are, first, the vendor’s retaining possession, after an absolute sale; second, the pendency of suits against him, at the time of a sale or transfer of the most valuable part of his property. Each of these, however, it is said, may be so explained, as still to render the sale valid. Where, after an absolute sale, the vendor still retains possession, I have always thought that it was a fraud per se, in other words that it was a legal fraud ; and, if I have been in error in this respect, I have the consolation of knowing, that I am in company with the late venerable and distinguished Judge Nott, and with Chancellor Kent. This Court has, however, held, in two recent cases, Terry v. Belcher, and Howard v. Williams, that notwithstanding possession may be retained after an absolute sale, or gift by the vendor or donor, yet the fact” is susceptible of explanation, and, if possession is shewn to have been retained for any Iona fide purpose, such as on rent or hire, or by a parent for his infant child, the sale or gift is not vitiated by it. To these decided cases, I would not undertake to oppose either my own opinion, or any reasoning, however satisfactory or conclusive it might be to my own mind: for I acknowledge the value of the maxim, stare decisis.
*123 The second badge or evidence of fraud which I have men-t coed, is clearly susceptible of explanation : For, unlike the first, it does not carry with it the evidence that no sale has taken place. The value of property very often consists in enabling a man to do justice to his creditors, who have furnished him with the means of living. A sale of it is usually absolutely necessary, both for this purpose, and sometimes to prevent ruin from overtakingthe debtor; and this, even after suits brought against him : and if such a sale, so made, were necessarily void, we should be making the law an instrument of fraud, instead of a shield against it.
¡Separately, these two evidences pf fraud might be explained, but when joined together in the same case, they make out, I had almost said conclusive, but certainly very strong evidence of fraud. Take the present case as an illustration. The plaintiff’s vendor was sued, and shortly before the judgments were obtained against him, sold to the plaintiff five of his negroes ; to his brother, the remaining one, and to his step-father, his land; but retained the possession of the whole, without the payment of either rent or hire. It is tasking' credulity very highly, to believe that such sales were not merely colourable, and for the secret use of the vendor: and how, after this proof, the presiding Judge could conclude, that there was no evidence on the part of the vendee, of a fraudulent intention in her purchase, I am at a loss to conjecture. These facts are the usual evidences of fraud, both in the vendor and vendee, and, nine times out of ten, the only evidences of it; for fraud is not to be expected to seek the glare of day, or the presence of witnesses for its consumation. It is usually effected in secret, and it is only from circumstances, such as these, that we presume it.
On the present occasion it is said, however, that they are explained, first, by the fact, that the plaintiff lived in the family of the vendor.; and, second, that she actually paid for the negroes a sum of money, fully equal to their value. The first fact relied on, in explanation, is, however, not sufficient for that purpose; for although she was an inmate of the vendor’s family, yet she was fully capable of managing her own property. In the cases, where the possession remaining with the vendor, has been held to be consistent with it, the relation of parent and child has sub *124 sisted between the parties. In these, it was both the interest, and the’duty of the parent to protect the property of his child, whose infancy rendered him incompetent to manage it himself. In this case, it is true, the vendee was the vendor’s sister-in-law; but there was neither moral obligation on the part of the vendor to guard her interests, nor legal incapacity on hers, prudently to manage them. If she was capable to buy, she was also capable so to apply her purchase, as to be most beneficial to herself. If she had thought proper to hire the negroes to the vendor, it might, under the decision of Terry v. Belcher, have rebutted the presumption of fraud; but unaccompanied by auy proof of this, or any other good reason, why the possession remained iu the vendor, it must be held to be evidence of fraud.
The second fact, in explanation, is not clearly made Out, even by the testimony of the vendor. For he proved that the seven hundred dollars (as ho alleged it to be) mentioned in the bill of sale, and the notes,- amounting to two hundred and ten dollars, was the entire consideration : but in another part of his testimony, he stated the consideration to be one thousand dollars: how the remaining ninety dollars was paid, does not appear from his testimony. The evidence, in explanation, ought to be so clear as to leave, no room to doubt the fairness of the sale.
It is true, that the verdict of a jury in favour of the sale would generally satisfy us that no fraud existed in it. But when they are told by the Court, that there was no proof of a fraudulent intention in the vendee, the question of fraud or no fraud arising from the facts in support or explanation of it, cannot be said to have been passed upon by them. W hat constituted evidence of fraud was a legal question, and it was the duty of the Court to have said to the jury, that the evidence adduced on the part of the defendant, amounted to fraud in both the vendor and vendee, unless the explanation. offered by the plaintiff satisfied them that none existed. The presiding Judge, too, it appears, thought, that if the plaintiff had not combined with the vendor, no matter bow fraudulent his intention may have been, it could not have affected the validity of the sale to her. It is, in general, immaterial from whom the fraud proceeds. If the vendor’s acts are legally fraudulent, it would seem that the vendee can take no legal title from them. For to be a sale, the vendor and vendee must legally *125 contract. If the fraud of the vendor is established, there is no legal contract on his part, for fraud makes it absolutely void, and hence the vendee’s title, depending on the legality of the sale, becomes also void. Hildreth v. Sands, 2d Johns. Ch. R. 35.* But in point of fact, I do not believe that a sale, fraudulent as against creditors, ever did take place where the vendee *126 was wholly innocent. If a vendor sells his property with a view to avoid the payment of his debts, it must be on a secret understanding that he should still have the use of it, or that ho should so receive the proceeds as not to be within the reach of his creditors ; without this, his fraud would be without motive, and every day’s experience satisfies us, that men neither commit crime or fraud, unless some advantage is expected to be derived from it. In this case, I think the Judge .erred in presenting such a distinction to the jury, for the facts either established the sale to be a fraud, in both vendor and vendee, or, that it was fair in both.
These remarks sufficiently dispose of the third ground : Connected, however, with it, is the second. Upon this part of the case, the Judge was correct, in saying to the jury, that so long as a man’s estate was unincumbered by legal liens, he was free to sell it in good faith. Still, however, in a question of fraud, the indebtedness of the vendor at the lime of ¡Sie sale is admissible as a circumstance of fraud, and if, as in this case, it amounts to insolvency, it is intitled to great weight in coming to the conclusion, whether the sale is fair or fraudulent: and so it should have been submitted to the jury.
The first ground relates to the evidence proposed to be given by the witness, Alderson, which was excluded by the Court. To understand this ground, it is necessary to- see with what view the testimony was proposed to be given, and whether it was material or immaterial to the issue. It was important to the plaintiff to shew that she had paid the consideration mentioned in the bill of sale, and which was alleged to be the real value of the slaves. This she effected by the testimony of Meacham, the *127 vendor ; who proved the payment of seven hundred dollars in cash, and the notes, amounting to two hundred and ten dollars. If he was correct that the bill of sale (which was written by him) should read “ seven hundred,” instead of “ eleven hundred,” then the consideration had been paid. But if he was not correct, then the consideration, even according to his own testimony had not been paid, by about four hundred dollars. It was, then, a material question to him, whether the word, in the bill of sale, was intended for “ seven ” or “ eleven ;” and he answered, that it was seven. To contradict him, a note for the purchase of the negroes, written by himself, was given in evidence, in which the ambiguous word, “ seven ” or “ eleven ” again occurred ; he asserted it to be seven in this also: and the witness, Alderson, was then offered to prove, that Meacham had admitted to him, that the note was, in truth and in fact, for eleven hundred dollars.
The .general rule is, that the answer of a witness, to an immaterial question, cannot be contradicted, to impeach his credit: but if the question is, in any wise, material to the issue, his answer can be contradicted. The question put to Meacham, and his answer, had a direct and material bearing on the issue of fraud or no fraud: It was, therefore, competent to the defendant to contradict him; and if he had proved, by Alderson, what he proposed to do, it appears to me, that the contradiction would have been as complete, as if the witness had said, Meacham admitted to me, that eleven hundred dollars was the cash consideration of the bill of sale. A new trial must be granted.

 The proposition announced in the text is, probably, intended to be confined to cases, in which the vendee, though innocent of any participation in the fraud, may be fixed with notice of it, expressed or implied. This is rendered almost certain by what is said in another part of the opinion, of the importance to the vendee, of her proving actual payment of the whole consideration of the sale: for the payment of the purchase money would only go to rebut the presumption of fraud, arising from the indebtedness of the vendor, so taras it attached to the vendee. A debtor might sell his property, witjf the fraudulent design of placing it beyond the reach of his creditors, by converting it into cash ; and it would not seem, from the opinion of the Court, in this case, that a purchaser, under such circumstances, would lose Ins money, if he paid a valuable consideration, and had no notice of the fraud.
A contrary opinion has been expressed by Chancellor Kent, in Hildreth v. Sands, 2 Johns. Ch. it. 42, but it is merely an obiter dictum: for the decision, in that case, went on the broader ground of full notice and actual participation in the fraud; the failure to prove payment of the purchase money, and the presumption that the alleged sale was merely colourable, being quite as strong as in the present case. The opinion of Chancellor Kent is thrown out, too, in the shape of a doubt; and the cases cited by him lend no countenance even to that, doubt. They are all cases of voluntary interests, except that of Stackpoole v. Gore ; and in that case Lord Uedesdale is misquoted, when he is made to say, that “ he doubted whether a purchaser for valuable consideration, under a decree fraudulently obtained, though ignorant of the fraud, could protect himself.” His real language is, that “ he very much doubted whether the purchaser was protected, as he held it to be clear, that a purchaser, under such circumstances, was bound to see that, at least as far as appeared on the face of the proceedings before- the Court, there was no fraud in the case.” 1 Dow, 30. So that it was, in effect, a case of implied notice. It can scarcely be contended that the indebtedness of the vendor is notice to the vendee of an intended fraud. In the first place, unles^ the debts are of record, notice of their existence cannot be presumed; for even Us pendens is not notice of general indebtedness: Edmonds v. Crenshaw and M’Morris, 1 M’C. Ch. 265; and if it were, still the further presumption would not follow, that the vendor was selling his property, merely to place it beyond the reach of his creditors ; for it might be, that he wqs selling for the very purpose of paying them.
*126 The retaining1 possession by the vendor, after an absolute sale, presents a very different case. There the vendee is fixed, not only with notice, but with actual participation in the fraud; for the presumption is, that the sale was colourable and pretensive only: and this presumption is not, in the smallest degree, rebutted by proof of payment of the purchase money. The payment may be made with solemn parade before many witnesses; and yet the money may be secretly returned immediately afterwards: and this return is one of the presumptions which arises from the fact oí possession being retained by the vendor. Hence, fromTwyne’s case down, the actual existence of a consideration has always been held wholly insufficien t, of itself, to rebut the presumption, arising from the vendor’s retaining possession, that the sale was colourable and fictitious. 3 Rep. 81. 5 Taunt. 212. 3 Buls. 226. 2 Vern. 510. 1 Ves. 245. 2 T. R. 587. R.