## 10534

## STATE v. McPHAIL.

## (105 S. E. 638.)

1. CRIMINAL LAW—RELEVANCY OF TESTIMONY DISCRETIONARY WITH COURT.—The question of whether testimony is relevant is in a large measure within the discretion of the presiding Judge, and his ruling is not the subject of appeal, unless there has been an erroneous exercise of discretion.

2. CRIMINAL LAW—APPELLANT HAS BURDEN OF PROVING PREJUDICIAL ERROR.—It is incumbent on appellant to satisfy the Supreme Court that there has been prejudicial error.

3. HOMICIDE—TESTIMONY OF THREAT MADE THREE OR FOUR WEEKS PRIOR TO KILLING HELD ADMISSIBLE.—Testimony as to a conversation between defendant and deceased, three weeks or a month prior to the killing, in which the defendant had with an oath told deceased that deceased had better tend to his own business, *held* admissible as against objection that it was too remote.

4. HOMICIDE—TESTIMONY AS TO UNPLEASANTNESS BETWEEN DECEASED'S WIFE AND THIRD PARTY HELD INADMISSIBLE.—In homicide prosecution, in which defendant denied having killed deceased, testimony that deceased's wife had cursed a third person *held* inadmissible.

5. HOMICIDE—EXCLUSION OF TESTIMONY AS TO DECEASED'S WIFE STRIKING DECEASED HELD PROPER.—In homicide prosecution, in which defendant denied having killed deceased, refusal to permit deceased's wife to answer question as to whether, within the year prior to the deceased's death, she had struck him with a hoe, *held* not error, where the wife had previously denied having at different times pointed pistols and a shotgun at deceased, such refusal being a proper exercise of Court's discretion as to the limit of testimony as to the attitude of deceased's wife toward deceased.

6. HOMICIDE—SHERIFF'S TESTIMONY THAT HE EMPLOYED DECEASED TO CATCH DEFENDANT SELLING WHISKEY HELD ADMISSIBLE.—In homicide prosecution, testimony of sheriff that he had employed deceased to catch the defendant selling whiskey held admissible.

7. HOMICIDE—TESTIMONY AS TO STATEMENT BY DEFENDANT ADMISSIBLE TO PROVE A THREAT.—Where deceased had been employed by the sheriff to catch defendant selling whiskey, testimony as to defendant's statement, after being tried for selling whiskey, that if he was ever tried again it would be for killing the man for reportng him, *held* admissible as tending to prove a threat by the defendant against the deceased.

NOTE: On evidence of antecedent threats on trial for homicide, see note in 3 L. R. A. (N. S.) 523.

8. WITNESSES—TESTIMONY RELATING. TO A ·COLLATERAL QUESTION NOT
   SUBJECT TO CONTRADICTION.—Where defendant denied having killed
   deceased, where deceased's wife denied having threatened deceased
   with a gun in her hand, testimony of other witnesses in contradiction
   of wife's testimony. *held* inadmissible; the testimony relating to a col-
   lateral question.

Before WILSON, J., Bamberg, Fall term, 1919.    Affirmed.

W. L. McPhail indicted for murder.. Upon conviction
for manslaughter, the defendant appeals.

The following are the exceptions which are directed to be
reported:

(1) Because his Honor erred in permitting the prosecut-
ing witness, Mrs. Walker (now Mrs. Hayes), to testify as
to the alleged conversation in the express office at Midway
between the defendant and the. deceased, about three weeks
or a month before the homicide, in which the defendant was
sought to be connected with a shipment of a certain whiskey,
and wherein it is alleged the defendant walked up to him with
an oath, stating that he had better attend to his own business,
whereas, said testimony should have been excluded; the
same being too remote to establish motive for the homicide,
and was irrelevant and incompetent, and prejudicial to the
defendant.

(2) That his Honor erred in excluding defendant's coun-
sel's question on the cross-examination of said witness, to
wit, *i. e.*, "Didn't you; on the afternoon your husband was
killed, curse Drew Steadley and call him vile epithets, and
after seeing him didn't you leave the store?" whereas, the
said question was proper to establish the mental attitude of
the prosecuting witness and her general disposition for vio-

lence upon the eve of the tragedy, and the defendant should have had the benefit of the jury's consideration of the prosecuting witness' violent conduct leading up to the circumstances and acts actually surrounding the subsequent killing.

(3) Because his Honor erred in ruling out as irrelevant the defendant's counsel's question of the same witness, *i. e.,* "Didn't you, at the time you left Drew Steadley's store, on the afternoon before your husband was killed, go home and get your pistol and start to his store to kill him?" whereas, the said inquiry was proper to establish the conduct, mental attitude, and violence of the prosecuting witness immediately preceding the homicide, committed in the dark and under the circumstances testified to in the case.

(4) Because his Honor erred in ruling out as incompetent the defendant's counsel's question, *i. e.,* "Didn't you, within a year's time before your husband's death, strike him with a hoe?" whereas, the testimony should have been admitted to establish the relation of deceased and bitterness existing between the prosecuting witness and her deceased husband, and for that reason would not be remote.

(5) Because his Honor erred, over the defendant's objection, in allowing the sheriff, S. G. Ray, to testify as to the deceased being in his employ and to catch the defendant for selling whiskey about six weeks before his death; whereas, he should have excluded such testimony, as being irrelevant and prejudicial to the defendant, and was calculated to influence the jury in his trial, by injecting the insinuations of other violations of the law of which he may have been suspected, and was an unjustifiable attempt to establish motive founded upon a bare suspicion and inconsistent with the friendship existing between the deceased and the defendant which is uncontradicted by the testimony.

(6) Because his Honor erred, over the defendant's objection, in permitting the witness, Dewey Bessinger, to testify, "I heard Mr. Mac say that if he was ever tried again it would not be for selling whiskey, but for killing the man for reporting him;" whereas, he should have excluded such testimony, for the reason that nowhere does the evidence show that McPhail sold whiskey or had anything to do with whiskey beyond drinking the same, and such testimony was calculated to prejudice the jury in the trial of his life by the introduction of the inflammable character of evidence, the same being in no wise responsible to the charge for which he was being tried.

(7) Because his Honor erred in refusing to permit the defendant to contradict the prosecuting witness, Mrs. Hayes, by asking the witness for the defense, W. S. Miley, the question, "Mr. Miley, I asked Mrs. Hayes this question yesterday, 'Mrs. Hayes, did you, while living in the town of Bamberg, in the presence of Mr. Miley, a police officer, standing in your own door with a gun in your hand, say to your husband, "I will cut you down with this gun." ' I ask you now, did she say this?" whereas, the question should have been permitted and the answer given, to show the relationship existing between the prosecuting witness and her dead husband, indicating a settled hatred and violence toward him, whether the same was immediately before the killing or not, it being perfectly competent to establish her general attitude toward her husband and to throw light upon who may possibly have been his murderer, and to relieve the defendant therefrom.

(8) Because his Honor erred in refusing to allow the witness, D. D. Steadley, from answering the question whether or not Mrs. Walker threw a brick at him and cursed him on the afternoon of the killing; whereas, the question was com-

petent and relevant, and should have been answered, in order to ascertain the general violence of the prosecuting witness, not only against her husband, but against her neighbors, so as to establish her condition of mind at the time of the homicide upon the night of that afternoon.

(9) Because his Honor erred in refusing to allow the witness, D. D. Steadley, in contradiction of the prosecuting witness, to testify as to threats against the said Steadley made on the afternoon of the night of the killing, and of her going home and getting her pistol to carry out her threats, and that her husband stopped her, and she cursed him in language set forth in the record; whereas, such testimony should have been permitted to establish her general mental and violent attitude toward the public, and likewise toward her husband in the afternoon of the homicide and a short time previous thereto.

(10) That his Honor erred in refusing to permit the witness, D. D. Steadley, to answer the question in contradiction to the prosecuting witness, Mrs. Hayes, "Mr Steadley, I asked Mrs. Hayes this question, 'Didn't you at the time go home and into the house and get your pistol, and start to Mr. Steadley's store to kill him, and didn't your husband stop you, and didn't you curse your husband for a damn black-hearted son of a bitch, and tell him that you would kill him if he didn't turn you loose?' Did she say and do those things?" whereas he should have permitted the answer in contradiction of the prosecuting witness, who had denied doing and saying the things therein mentioned, and the jury were entitled to have this testimony to test her generally as a witness, and further, it bore directly upon her attitude toward her husband—her threats against him actually made in the afternoon of the killing and a short time before the homicide.

22—S. C. 115

(11) Because his Honor erred in ruling out the testimony of Mrs. D. D. Steadley as to the disturbance between Mr. and Mrs. Walker and between Mrs. Walker and Mr. D. D. Steadley at the store, as to the trouble between D. D. Steadley and Mrs. Walker, whereas, he should have permitted the testimony to contradict Mrs. Walker in her statement that the difficult arose from the fact that her little boy saw D. D. Steadley selling whiskey, and Mrs. Steadley should have been permitted to testify that the same arose from a different cause.

*Messrs. Carter, Carter & Kearse* and *Chas. Carroll Simms,* for appellant, cite: *Testimony as to McPhail's violation of the prohibition laws was immaterial and irrelevant:* 43 S. C. 209; 33 S. C. 591; 71 S. C. 143. *Impossible to prescribe a rule fixing a limit beyond which a threat would not be competent evidence:* 35 S. C. 32.

*Mr. R. L. Gunter, Solicitor,* for the respondent, cites: *No corroboration as to difficulty between deceased and his wife:* 26 S. C. 187. *Supreme Court will not consider the sufficiency of testimony:* 26 S. C. 602; 33 S. C. 151; 62 S. C. 377. *Judgment will not be reversed on account of admission of irrelevant testimony, unless prejudice is clearly shown:* 72 S. C. 350; 83 S. C. 103; 85 S. C. 273; 89 S. C. 134. *Test as to relevancy of testimony:* 11 Ency. of Evidence 183. *Witness cannot be contradicted on an immaterial or collateral matter:* 33 S. C. 582; 49 S. C. 414.

December 20, 1920.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

The defendant was indicted for the murder of H. W. Walker, and the jury found him guilty of manslaughter,

whereupon he appealed on numerous exceptions, which will be reported.

The question whether testimony is relevant must rest necessarily, in large measure, within the discretion of the presiding Judge, and his ruling is not the subject of appeal, unless there has been an erroneous exercise of his discretion. *McCrary v. Railway,* 83 S. C. 103, 65 S. E. 3, 18 Ann. Cas, 840.

It is incumbent on the appellant to satisfy this Court that there has been prejudicial error, but he has failed to do so; and we will proceed to state our reasons why none of the exceptions can be sustained. The exceptions will be considered in regular order.

First Exception.—The testimony tended to show a threat on the part of defendant against the deceased, and the circumstances out of which it arose.

Second Exception.—Mrs. Walker, afterwards Mrs. Hayes, was not indicted for killing her husband, and was merely a witness; therefore, any unpleasantness between her and a third party was wholly immaterial.

Third Exception.—What has just been said disposes of this exception.

Fourth Exception.—His Honor, the presiding Judge, did not rule that the defendant could not interrogate Mrs. Hayes as to threats, and her general attitude towards her husband, but merely exercised his discretion as to the limit of such testimony, as will be seen by reference to the following: "Didn't you draw a pistol on your husband not long before your husband was killed? The Court: You must name some time. Mr. Carter: Q. Mrs Hayes,

within a few months before your husband was killed? A. No, sir."

Again: "Mr. Carter: Our position is that he has the right to offer any testimony that would tend to show that he is not the one that killed this man, and any testimony tending to show that anybody else might have had a bad feeling against him, or committed any wrong against him, is competent. The Court: You are trying to show that she killed her husband? Mr. Carter: No, I would not say that. Mr. Carter: Q. Mrs. Hayes, didn't you curse your husband for a 'damned black-hearted son of a bitch,' and tell him that you would kill him if he did not turn you loose, and you would kill him before 12 hours? Mr. Miley: We object to that. They are not charging her with the killing; they want to go into something that has nothing to do with the killing. The Court: He is trying to get it in, on the ground that she threatened to kill him. Go ahead with it. * * * Q. Answer the question. A. No, sir; I did not say that."

Again: "Mr. Carter: Mrs. Hayes, I give you notice that I will put a witness on the stand to contradict you, in case you deny it. Did you, two or three weeks before your husband was killed, at the home on the porch, pull from your clothing a pistol and state in the presence of Mrs. Steadley that your husband had beaten you, and you put that pistol to his head and told him to stop? A. No, sir; I never carried a pistol. Q. Didn't you, about two weeks before he was killed, at the home of Mrs. Ben Donald, tell her that you had drawn a pistol on your husband, and told him you were not taking anything more off him? A. No, sir. Q. Didn't you, about two weeks before your husband's death, at your home, have a shotgun pointed at your husband, and your husband had a pistol pointed at you, in the presence of old man William Stokes? A. No, sir."

Fifth Exception.—This exception is disposed of by what has already been said.

Sixth Exception.—The testimony in this exception tended to prove a threat by the defendant against the deceased.

Seventh Exception.—The testimony in this exception related to a collateral question; therefore, the answer of the witness was not subject to contradiction. *State v. Sullivan,* 43 S. C. 205, 21 S. E. 4.

Eighth Exception.—The difficulty between Mrs. Hayes and a third party had no relevancy to the case under consideration.

Ninth Exception.—What has already been said disposes of this exception.

Tenth Exception.—What has already been said disposes of this exception.

Eleventh Exception.—What has already been said disposes of this exception.

Affirmed.

MR. JUSTICE GAGE did not participate on account of sickness.