17201

JAMIE P. GRIGGS, Respondent, v. W. B. DRIGGERS *ET AL.*, of whom The Great Atlantic & Pacific Tea Company is Appellant

(94 S. E. (2d) 225)

98

*Messrs. Paulling & James,* of Darlington, *for Appellant,*

*Messrs. James P. Mozingo, III, Benny R. Greer* and *Archie L. Chandler,* of Darlington, *for Respondent,*

*Messrs. Paulling & James,* of Darlington, *for Appellant,*

August 20, 1956.

TAYLOR, Justice.

This appeal arises out of an action brought in the Court of Common Pleas for Darlington County, wherein plaintiff alleges that prior to the injury in question he was well and normal in every respect but that on or about the 6th day of February, 1951, while employed as a meat cutter by the defendant company, at its store in Hartsville, South Carolina, he was injured while carrying a quarter of beef into the refrigerator box or cooler, by striking his left leg against a meat stand that had been left protruding into the walking area of the cooler by a fellow worker, his injury being the result of the negligence, gross negligence, carelessness, willfullness, and wantonness of the defendants and the servants, agents, and employees of the corporate defendant, and that W. B. Driggers was the manager in charge of appellant's place of business.

The defendant Driggers, by way of answer admitted his connection with the corporate defendant as manager and that on said date plaintiff was employed as a meat cutter but denies the remaining allegations of the complaint, pleads the fellow servant doctrine, and alleges that if any injuries were sustained by respondent at or about the time or place mentioned, which he expressly denies, that said injury was caused solely by respondent's own negligence, gross negligence, carelessness, willfullness, and wantonness.

Appellant company, by way of answer, admits the residence of defendants, the employment of the defendant Drig-

gers and plaintiff at its Hartsville store and denies the remaining allegations of the complaint. The answer further sets forth that if any injury was sustained by plaintiff at or about the time and place mentioned in the complaint, which is expressly denied, said injury was caused solely by respondent's own negligence, gross negligence, carelessness, willfullness, and wantonness.

The case was tried at the July, 1955, Term of said Court and resulted in a verdict for respondent in the amount of $12,500.00 actual damages.

Upon conclusion of all the testimony, the trial Judge granted the motion for a directed verdict as to the defendant Driggers and withdrew from the jury's consideration certain specifications of negligence and the question of punitive damages. A motion for judgment *non obstante veredicto* or a new trial in the alternative upon grounds set forth in the record were refused, and appellant now comes to this Court upon exceptions which present the following questions as set forth in its brief:

"1. Was the Mortuary Table admissible in evidence in view of the uncontradicted testimony regarding respondent's health?

"2. Were the records of the Veterans Administration reporting prior medical examinations of respondent and the oral testimony of Vivian Morse, the custodian, as to their contents admissible as evidence of respondent's physical condition in a subsequent action by him for injuries alleged to have been received in employment?

"3. Did the Trial Judge err in (a) charging the jury regarding the basis of respondent's recovery and (b) refusing to charge the requested limitation thereon?"

The first question must be resolved against appellant's contention. The plain, explicit language of Section 26-12, Code of Laws of South Carolina, 1952, provides:

"When it is necessary, in any civil action or other mode of litigation, to establish the life expectancy of any person

from any period in his life, whether he be living at the time or not, the table below shall be received in all courts and by all persons having power to determine litigation as evidence (along with other evidence as to his health, constitution and habits) of the life expectancy of such person. * * *" See *Long v. Carolina Baking Co.,* 193 S. C. 225, 8 S. E. (2d) 326; *Alexander v. Durham Life Ins. Co.,* 181 S. C. 331, 187 S. E. 425.

Upon trial, appellant took the position that respondent's condition was not the result of an injury received at the time and place and under the circumstances alleged, and respondent offered into evidence the records of the Veterans' Administration in rebuttal, it being contended that such evidence was admissible under Section 26-101 of the Code of Laws of South Carolina, 1952, which reads as follows:

"When certified copies or certified photostatic copies of documents admissible.

"When the original of any instrument, document or other paper is required or authorized by law to be recorded or is kept on file in any public office of the United States or any agency thereof, the State of South Carolina or any agency thereof or any political subdivision of this State and the original of any such paper is required to be kept on file in any such office, is in the possession of any adverse party or has been lost or destroyed, a certified copy of the record of such paper, if it has been recorded, or copy of such paper certified by the lawful custodian thereof, if it is kept on file in any such office, must be received in evidence in any court of competent jurisdiction in lieu of the original of such paper. A certified photostatic copy of any such paper may be used in lieu of a certified copy thereof, and such certified photostatic copy shall in all respects be treated as a certified copy under the provisions of this section."

It will be observed that the foregoing section of the Code specifically provides that under certain conditions a certified copy of an instrument, document, etc., must be received in

evidence in any Court of competent jurisdiction in lieu of the original. In the same Code chapter and under the same title, three sections refer to the introduction of documents into evidence. Section 26-104 provides that a true copy of an Order concerning the probate of a will or granting of an administration, certified by the probate Judge "shall be *sufficient evidence* of the appointment of such executor or administrator in any court in this State." (Emphasis ours.) Section 26-131, which relates to presumption of death under the Federal Missing Persons Act, provides that the written finding of such presumption "or a duly certified copy of such finding, shall be received in any court, office or other place in this State as *prima facie evidence* of the death of the person therein found to be dead * * *." (Emphasis ours.) Section 26-132 provides that an official written report or record, or duly certified copy thereof, that a person is missing * * * made by an official or employee of the United States authorized by the act referred to in Section 26-131 or by any other law of the United States to make the same "shall be received in any court, office or other place in this State as *prima facie evidence* that such person is missing * * *." (Emphasis ours.)

Chapter 6, Section 3-632, 1952 Code of Laws of South Carolina, requires the Commissioner of Agriculture annually to cause to be analyzed at least one sample taken of every concentrated commercial feeding stuff that is found, sold, or offered for sale in the State, and Section 3-637 provides:

"In all prosecutions in the courts of this State arising under the provisions of articles 1 to 6 of this chapter, and the rules and regulations made in accordance therewith, the certificate of the analyst or other officer making the analysis or examination when duly sworn to and subscribed by such analyst or officer shall be *prima facie evidence* of the facts therein certified." (Emphasis ours.)

And Chapter 4, Section 6-379, Code of Laws of South Carolina, 1952 (1955 Code Supplement), provides:

"In any criminal or civil action in which title to livestock is involved or proper to be proved, the certificate provided for in § 6-367 shall, when recorded as provided for in § 6-368, be *prima facie evidence* of ownership of any live-stock bearing the brand shown on the face of the certificate. * * *" (Emphasis ours.)

Chapter 4, Section 66-186, Code of Laws of South Carolina, 1952 (1955 Code Supplement), which relates to the registration and the protection of trademarks, provides:

"Any certificate of registration issued by the Secretary of State under the provisions hereof or a copy thereof duly certified by the Secretary of State shall be admissible in evidence as *competent and sufficient proof* of the registration of such trademark in any action or judicial proceedings in any court of this State." (Emphasis ours.)

The sections of the Code heretofore referred to provide that the respective document or certified copy thereof shall either be received as "sufficient evidence" or "prima facie evidence" while Section 26-101 provides only that a certified copy shall be received as evidence in any Court of competent jurisdiction *in lieu of the original of such paper.*

The trial Judge admitted the evidence complained of stating, "* * * I am going to admit the records; I think they come within the rule as to public records. I will overrule the objection."

The records photostated and admitted into evidence in the instant case were taken from respondent's service record commencing at the time he entered service, a portion of which was furnished the Veterans' Administration by the Army. The custodian of such records testified that he "made a review of all the clinical records that we have that were furnished to us by the Army and nowhere in any of the clinical records is there any mention of varicose veins." This testimony was clearly a violation of the best evidence rule even if the records referred to had been admissible.

The question before the Court in *State v. Pearson,* 223 S. C. 377, 76 S. E. (2d) 151, was whether a report by a magistrate to the Highway Department made pursuant to a statute is admissible in evidence for the purpose of showing a prior conviction of one charged with operating a vehicle while under the influence of intoxicating liquors upon proper identification by the custodians of the records. As pointed out in the Opinion, magistrates are required by law to keep records showing the issuance of all warrants and their disposition.

Under these circumstances, it can hardly be disputed that such is a public record. The Court in its Opinion quoted from *Commonwealth v. Slavski,* 245 Mass. 405, 140 N. E. 465, 469, 29 A. L. R. 281:

" 'The principle which seems fairly deducible from them is that a record of a primary fact made by a public officer in the performance of official duty is or may be made by legislation competent *prima facie* evidence as to the existence of that fact, but that records of investigations and inquiries conducted, either voluntarily or pursuant to requirement of law, by public officers concerning causes and effects and involving the exercise of judgment and discretion, expressions of opinion, and making conclusions are not admissible as evidence as public records.' " [223 S. C. 377, 76 S. E. (2d) 153.]

The custodian of the records for the Veterans' Administration in qualifying the records testified that it is required that "the record be kept once a veteran files a claim" and that the record in question occupies this status.

After objection by appellant to the introduction of such evidence into the record, the following transpired:

"Q. How many examinations has this boy had? Several since 1947—since 1942, I mean? A. Since 1942, yes, sir.

"Q. There was an examination when he went in and then an examination when he was discharged? A. That's right, sir.

"Q. And you have other examinations on the record there? A. That's right.

"Q. I would like to ask him—as a matter of fact a varicose vien on the answer form there they have a place for varicose vein don't they? A. Yes, sir, on the examination blank.

"Mr. Mozingo: Now your Honor, we think that in reply to their testimony of these witnesses that Griggs said that he got this in the army and had it in the Army that we are entitled to refute their testimony by the record of the Veterans Administration.

"Q. Let me ask you this—the United States government or the department of the Veterans Administration requires that those records be kept, don't they? A. They require that the record be kept once a veteran files a claim.

"Q. And that is the status of the record that you have and they are records that are required to be kept are they not? A. That is right, sir.

"The Court: Let me see that statute. Mr. Paulling, I am going to admit the records; I think they come within the rule as to public records. I will overrule the objection.

"Mr. Mozingo: Your Honor, now in furtherance of that, we of course, are only interested in what is in reply to their testimony so Mr. Morse if you will on the examination we are interested in whether or not he had a varicose vein or any history of it on the examination of the Army as to his left leg. What year is that now? A. I have a photostatic copy of his enlistment record dated January 5, 1942. At that time, under Item No. 6 entitled 'Varicose Veins' there is no mention of a varicose vein of his left leg. There is, however, at that time a mention typed in which says 'Slight right popliteal, NSND.'

"Q. Now that is on the right leg. What does the NS mean? A. I know personally, but I don't.

"Q. (Interrupting) You are not a doctor, but it is nonsymptomatic? A. That's right.

"Q. All right. Now, that is on the right leg. Is there any history of varicose veins on the left leg? A. There is none listed on this document.

"Q. 1942. That is on the examination to go in the Army? A. That's right.

"Q. All right. What is your next examination? A. There are several examinations while he was in the service and then a photostatic copy of his discharge.

"Q. Suppose—while he was in service, do you have an examination where it has a record of varicose veins? A. When these records were subpoenaed, if I might say this, I made a review of all the clinical records that we have that were furnished to us by the Army and nowhere in any of the clinical records is there any mention of varicose veins.

"Q. I see. Now upon his discharge from the Army, they are given an examination? A. Yes, sir.

"Q. Do you have there the records of the examination he took upon his discharge? A. I have a photostatic copy of the report of physical examination of enlisted personnel prior to discharge dated January 3, 1945.

"Q. And is that the most recent one—that is his discharge from the Army? A. That is the discharge examination.

"Q. Does it have a place there about varicose veins? A question? A. Item 18 is entitled 'Varicose veins.'

"Q. What do you find there under that? A. The word 'None' typed in."

The legislature has not by act made such records as we have under consideration here competent evidence; hence the *Pearson case, supra,* is no authority for their admissibility; neither is *G. Ober & Sons Co. v. Blalock,* 40 S. C. 31, 18 S. E. 264, relied on strongly by respondent, wherein the President of the Board of Trustees of Clemson College was permitted to testify as to the analysis of certain fertilizer as disclosed by the records made by an agent of the Department of Agriculture under statutory authority, and the College is required by law to keep such records. The syllabus correctly stating that:

"The board of trustees of Clemson College having, by act of the legislature, been made the custodian of records of the former department of agriculture, the president of that board is competent to identify the record of the analysis of certain fertilizers made by the department of agriculture."

Of interest is *Sandel v. State,* 126 S. C. 1, 119 S. E. 776, 780, where this Court stated:

"We know of no law imposing upon the state board of health, acting through the state health officer or his subordinates, the duty of reporting and recording an official statement of the steps taken, testimony received, and conclusions reached on the basis of information derived from others, in the course of a special inquiry of the kind undertaken by Dr. Coward [the physician making the report]. Since no such specific official duty was imposed upon Dr. Hayne [the State Health Officer], no authority conferred by him upon Dr. Coward could transmute a hearsay report into competent evidence as an official document. * * * Since no authority can be implied from the nature of the state health officer's position to make an 'official record' of matters outside his personal knowledge and that of his subordinates, the report of Dr. Coward lacked the express sanction of law essential to impressing a report containing such hearsay matters with the probative dignity and value of an admissible official record.

"But even if made officially under express authority of law, a report or inquisition of the character of the Coward paper is not generally admissible in evidence to prove the truth of all matters therein contained. An official record very closely resembling the Coward report in scope and purpose is the record of a corner's inquest. * * *

"The danger of making a coroner's inquest, or any official investigation of the manner and cause of a person's death, a means of perpetuating testimony to be used in a civil suit, is obvious. Commenting upon the pernicious consequences of such a rule, Chief Justice Hayt, of the Supreme

Court of Colorado, says [*Germania Life Ins. Co. v. Ross-Lewin*, 24 Colo. 43, 51 P. 488]:

" 'In case of death under suspicious circumstances, or resulting from accident, the rule permitting inquisitions to be used in evidence would result in a race and scramble to secure a favorable coroner's verdict, that would influence, and perhaps control, in case suit should be instituted, against life insurance companies upon policies of insurance, and in cases of accidents occurring as a result of negligence on the part of corporations operating railways, street car lines, mining for coal or the precious metals, etc.' "

In *Stack v. Prudential Ins. Co. of America*, 173 S. C. 81, 174 S. E. 911, 913, this Court used the following language:

" 'It is here sufficient to note that the Hearsay rule as accepted in our jurisprudence, signifies a rule rejecting assertions offered testimonially, which have not been in some way subjected to the test of cross examination.' " 2 Wigmore, 1674, 1675.

The instant case does not involve matters between the Government and the veteran as in the case of *Long v. United States*, 4 Cir., 59 F. (2d) 602, but a third party who had no part in making the record or had access thereto and was denied the opportunity to cross examine those who did. The assertion of the custodian of the records that "When these records were subpoenaed, if I might say this, I made a review of all the clinical records that we have that were furnished to us by the Army and nowhere in any of the clinical records is there any mention of varicose veins" is clearly inadmissible under any theory, and to permit the custodian of the records of the Veterans' Administration to select therefrom documents which were made up from the veteran's service record and receive them into evidence as an exception to the rule in a controversy between the veteran and a third party would, under present conditions when practically every able-bodied male above the age of eighteen has a service record, be far-reaching and result in the exception swallowing up the rule.

There is no merit in appellant's third question. Under the testimony, the charge was correct; however, we are of the opinion that the judgment appealed from should be set aside for the reasons heretofore stated and the case remanded to the Court of Common Pleas for Darlington County for a new trial; and it is so ordered.

STUKES, C. J., OXNER and LEGGE, JJ., and BRUCE LITTLEJOHN, Acting Associate Justice, concur.