17974

The STATE, Respondent, v. A. L. HOMEWOOD, Appellant

(128 S. E. (2d) 98)

*James P. Mozingo, III,* and *Greer & Chandler,* of Darlington, *for Appellant,*

Messrs. *Daniel R. McLeod, Attorney General, Victor S. Evans, Assistant Attorney General,* and *John W. Foard, Jr., Assistant Solicitor,* of Columbia, *for Respondent,*

October 10, 1962.

BUSSEY, Justice.

The defendant, appellant here, was indicted for violation of Sections 12-10 and 62-306 of the 1952 Code of Laws of South Carolina. The jury acquitted him as to violation of Section 12-10, but found him guilty as to violation of Section 62-306. A motion for a new trial was refused and a sentence of one year imprisonment was imposed upon the defendant.

The prosecution of the defendant arose out of alleged conduct on his part while president and treasurer of the Francis Marion Life Insurance Company, which for convenience will be referred to simply as the company. The company had its home office at Columbia, South Carolina and was organized by the defendant and others on May 21, 1956, and chartered by the Secretary of State on June 14, of that

year. In connection with the organization of the company, the defendant subscribed to 238,830 shares of the company's capital stock at a par value of $1.00. At the organizational meeting of the company on May 21, 1956, the following resolution was adopted:

"Resolved, that the unpaid balance due from A. L. Homewood to the corporation for the shares of stock subscribed for by him shall be due and payable to the corporation no later than May 21, 1961, and that no interest shall be paid upon the unpaid balance, and in the event the said balance shall not be paid on or before May 21, 1961, then and in such event the stock subscription for the unpaid shares shall be null, void and of no effect."

In addition to being president-treasurer of the company, the defendant was given the exclusive right by the company to sell authorized issues of the capital stock of the company to the general public. He was registered as a securities dealer in the State of South Carolina on June 19, 1956, and maintained his registration for several years thereafter. Various persons who sold capital stock of the company were registered as agents for the defendant A. L. Homewood.

After the organization of the company, an offering of 150,000 shares of its capital stock was made to the public at $6.00 per share; and later it made another offering at $9.00 per share, both the $6.00 and $9.00 offerings being made on the basis of prospectuses, each of which indicated new issues of common stock. With respect to the $6.00 issue, the prospectus showed the price per share to be $6.00, a sales commission of 60¢, and a net of $5.40 to the company. With respect to the $9.00 issue, the prospectus showed a sales price of $9.00, a sales commission of 90¢, and a net of $8.10 to the company. Both prospectuses showed that any net to the company in excess of $1.00 per share, the par value of the stock, would represent surplus to the company.

The State offered evidence of the sale of stock upon the two prospectuses by various persons licensed as agents of

the defendant to members of the public, and evidence to the effect that the various agents had been instructed by the defendant as to the method and manner of sale of capital stock by said agents. The State further offered evidence tending to prove that when various of such sales were made, the company did not receive the benefit of the surplus as represented on the prospectus.

The evidence reflects several variations in the manner and method of issuing the capital stock sold upon the said prospectuses. The defendant admittedly had paid for and had issued to him some of the shares of stock which he was entitled to purchase under his original subscription, paying therefor $1.00 per share. Upon sales to the public, in some instances, instead of new stock being issued to the purchaser, shares were issued to the purchaser at the increased price and transferred from stock already owned by the defendant.

In other instances with, respect to the $6.00 issue, the purchaser would, for instance, pay into the company $600.00 for which he would be issued one hundred shares and coincidentally therewith the defendant would be issued five hundred shares, which five hundred shares would be charged against the original subscription account of the defendant, with only the $600.00 paid by the purchaser going into the treasury of the company. With respect to the $9.00 issue, the purchaser would, for instance, pay to the company $900.00, with one hundred shares being issued to the purchaser and eight hundred shares being issued to the defendant and charged against his original subscription account, but with only $900.00 going into the company treasury in connection with the whole transaction. From the shares thus issued to the defendant, there was evidence of subsequent transfers to purchasers under the prospectuses.

Briefly summarized, the State contended and offered evidence tending to prove that through December 31, 1960 the defendant was issued 39,205 shares of capital stock directly by the company and that he had acquired 21 shares from other people, making a total of 39,226 shares issued in his

name; that there were 8,759 shares transferred from defendant's holdings to purchasers in lieu of previously unissued stock during the period the stock was selling for $6.00 per share, and that 3,924 shares of his holdings were similarly transferred during the time the stock was selling for $9.00 per share; that after these various transfers, as of December 31, 1960, he still owned 26,723 shares and that the records of the company failed to show where he had paid for more than 7,540 shares at the original subscription price of $1.00 per share, or any other price, it being admitted by the State that he had paid in the sum of $7,540.00.

Except for offering and attempting to offer through the State's witnesses on cross examination certain documentary evidence, some of which will be hereinafter mentioned, the defendant proffered no defense.

Section 62-306 of the 1952 Code, which the defendant was convicted of violating, makes unlawful "The use or employment by any person of any fraud, fraudulent act, fraudulent practice or fraudulent transaction or of any device, scheme or artifice to defraud or to obtain money or property by means of any false pretense, representation or promise, in connection with the sale within or from this State of any security, * * *."

The defendant alleges numerous errors below, one of them being that the trial judge should have directed a verdict in that the evidence was insufficient to support a conviction. The foregoing summary of the evidence adduced on behalf of the State as to the violation of Section 62-306 by the defendant, shows this exception to be clearly without merit.

The defendant alleges error on the part of the court below in refusing a motion for a continuance. Defendant's motion was based on the fact that one Walter G. Wilson who served briefly as president of the company after defendant's official connection therewith was severed, and who at the time of the trial as secretary-treasurer of the company was

engaged in making an audit which would "inquire into the stock transactions, among other things, of the company", the defendant contending that he should have the benefit of that particular audit to better prepare his case for trial. It appeared that the audit by Mr. Wilson could not be concluded for another week or so after the commencement of the trial.

While the record is not clear as to just what was said or done on the day prior to the trial, it appears that the motion for continuance was then first made, and renewed on the day the trial commenced. Apparently, when the motion was first made, mention of or reference to an unspecified audit was made and the judge at chambers directed or suggested that defense counsel be furnished a copy of any audit which the State might be in possession of. It does not appear that any audit of the stock transactions involved in this case had been made and completed by anyone at the time, although Camp, an employee of the Insurance Commissioner's office, had made or conducted an investigation and was possessed of at least certain notes or memoranda as to what he had found. In any event, as the result of whatever transpired beween counsel and the court the day prior to the trial, there was furnished to counsel for the defense that night a report of a routine examination of the affairs of the company for the year 1960, made by one J. C. Gayle who was an examiner employed by the South Carolina Insurance Department. This report, "Defendant's Exhibit for Identification No. 2", will be hereinafter referred to on another point.

In renewing the motion for continuance, counsel for the defense took the position that the State had not furnished the defense what counsel contended that the court had instructed the State to deliver. Whatever may have transpired between the court and counsel on the previous day, the record does not reflect that there was in existence at the time a complete audit in anything like final or concise form with respect to the stock transactions involved in the case.

The circuit judge denied the motion for continuance on the ground that the case had been pending from March to September during which time counsel for defendant admittedly had made no effort to examine the books of the company with reference to stock transactions. In addition to no effort being made by counsel to see the books, as far as the record goes, the defendant was still a stockholder of the company during this *interim* of time with the right to inspect the books of the company at all times. See Section 12-263 of the 1952 Code of Laws.

This court has repeatedly held that applications for a continuance in a criminal proceeding are addressed to the sound discretion of the trial court, and that the trial court's ruling on a motion for continuance will not be disturbed in the absence of a clear showing of abuse of discretion to the prejudice of the appellant. We see no abuse of discretion here. *State v. Lytchfield,* 230 S. C. 405, 95 S. E. E. (2d) 857, 66 A. L. R. (2d) 263; *State v. Livingston,* 233 S. C. 400, 105 S. E. (2d) 73; *State v. Britt,* 235 S. C. 395, 111 S. E. (2d) 669, 674.

Error is alleged on the part of the trial judge in refusing a motion on the part of the defendant to separate and exclude the witnesses from the court room. This court has repeatedly held that the exclusion of witnesses rests largely in the discretion of the trial judge and is not demandable as a matter of right. *State v. Williams,* 226 S. C. 525, 85 S. E. (2d) 863; *State v. Fuller,* 227 S. C. 138, 87 S. E. (2d) 237; *State v. Britt, supra; State v. Sharpe,* 239 S. C. 258, 122 S. E. (2d) 622.

Counsel for the defendant erroneously took the position that they were entitled to the granting of such motion as a matter of right and urged no unusual circumstance or circumstances in support of the motion. Moreover, a review of the record indicates to us no prejudice as a result of the witnesses not being separated. We see no error on the part of the trial judge, under these circumstances.

The defendant asserts reversible error in the trial court's admitting in evidence testimony of purchasers as to their conversations with stock salesmen, other than purchasers dealing with Roy Krell, he being the only registered agent of the defendant who testified, on the ground that such testimony was hearsay.

Admissibility of testimony is largely within the discretion of the trial judge and his exercise thereof will not be disturbed on appeal unless there is a manifest abuse of discretion or commission of legal error, which must be accompanied by probable prejudice to the other party in order to entitle him to a new trial for the admission of the questioned evidence. *State v. Collins,* 235 S. C. 65, 110 S. E. (2d) 270, cert. den. 361 U. S. 895, 80 S. Ct. 199, 4 L. Ed. (2d) 152; *State v. Outen,* 237 S. C. 514, 118 S. E. (2d) 175.

The State proved a *prima facie* case of agency by showing that the witnesses bought their stock from salesmen who were registered with the State Securities Commissioner as agents of the defendant, he being the exclusive broker-dealer for the securities of the company. Krell testified to the fraudulent "sales pitch" which the defendant had directed him to make to prospective purchasers, and the testimony of the purchasers shows that substantially the same "sales pitch" was used by the other salesmen. Moreover, the statements of the salesmen were admissible here as a part of the *res gestae,* being statements made at the time of sale in connection with the sale of stock and being within the scope of authority of such salesmen.

Defendant further contends in this connection that the testimony as to the representations of the salesmen was not admissible because, in some instances, the testimony purportedly varied the terms of certain written stock purchase contracts which were in evidence. It is well established that the parol evidence rule does not apply to evidence as to expressions of the parties outside of the instrument when addressed to an issue of fraud. *Aaron v.*

*Hampton Motors, Inc.,* 240 S. C. 26, 124 S. E. 585; 9 Wigmore, Evidence, Sec. 2439.

■ Under all of the circumstances, we see no abuse of discretion or other error on the part of the trial judge in admitting this line of testimony.

The defendant alleges error on the part of the trial judge in refusing to admit into evidence certain documents proffered by the defense in the course of the cross examination of a witness for the State, George A. Camp. The court refused the admission of the following:

1. An unidentified check in the amount of $5,000.00, dated May 10, 1957.

2. A routine report of examination of the affairs of the company made by one J. C. Gayle for the calendar year 1960, hereinabove referred to, the same being Defendant's Exhibit for Identification No. 2.

3. An uncertified photostatic copy of what purported to be the report of a routine examination of the affairs of the company from the date of its organization to April 30, 1957, made by one Louis A. Searson, an examiner for the South Carolina Insurance Department, and referred to as Defendant's Exhibit for Identification No. 3.

■ With respect to the unidentified check, while it is not in the record, it was apparently offered for the purpose of proving that the defendant, in May 1957, paid the sum of $5,000.00 toward the purchase price of capital stock issued to him. The court quite properly excluded the check as the witness Camp, of course, could not identify said check, and defendant offered no other proof of its authenticity. Moreover, there was no prejudice to the defendant as counsel was allowed to cross examine the witness as to an entry of a five thousand dollar payment by the defendant and the State admitted that a five thousand dollar payment was made by him at about that time.

■ Exhibit No. 2 was offered in support of defendant's contention that the State had not furnished the night or day before the trial what the defendant contended

he was entitled to receive. Counsel for defense at the commencement of the trial referred to this exhibit as an "audit" and made the following statement with reference thereto.

"This audit does not deal with the question involved, nor with the crime with which he is charged, and it shows nothing relevant thereto."

Thus, it appears from counsel's own statement that no prejudice could have resulted to the defendant through the exclusion of this particular exhibit since it was concededly irrelevant.

The only excluded exhibit worthy of serious discussion is Exhibit No. 3, it being contended that said purported report of examination shed some light on whether the defendant had paid for the stock issued to him; and that since an elemnt involved in the violations of the statutes was willfulness and intent, by virtue of various examinations by the Insurance Department without finding anything wrong, the defendant was entitled to assume that everything he was doing was all right and that he could thereafter proceed under the assumption that his conduct was proper and not unlawful.

Although counsel referred to various examinations, the record does not affirmatively reflect that there were in existence any reports of examinations other than Exhibit No. 2, concededly irrelevant, and Exhibit No. 3.

After some discussion, in the course of which counsel offered the entire report in evidence, the court excluded the exhibit on the grounds that there was too much extraneous matter therein and that said exhibit was not relevant, holding, in effect, that any mistake on the part of the Insurance Department in failing to discover the conduct of the defendant (as disclosed by the evidence) at an earlier date, was not relevant to the issue being tried. After further colloquy between counsel and the court, counsel stated:

"All right, sir. Your Honor, here is the part we want in: the 'scope of examination'."

Reference to the exhibit in controversy shows "Scope of Examination" to be as follows:

"It should be first stated that this is a new Company and, therefore, has not been, heretofore, examined. In cooperation with the management and in view of the fact that the Company is offering a rather large portion of its Capital for sale in the open market, the examination has been extended to cover its financial position as of April 30, 1957—the end of the first quarter in the current year."

In considering whether there was error on the part of the trial judge in striking or excluding evidence, we are not concerned with the precise grounds of his ruling, but with whether the ruling was right. *Ivester v. Fowler,* 109 S. C. 424, 96 S. E. 154. This being the case, we think it not amiss here to refer to certain rules governing the admissibility of this particular exhibit, not mentioned by counsel or the court.

While the matter is generally within the sound discretion of the trial judge, it is ordinarily improper to introduce writings in evidence as a part of cross examination. 98 C. J. S., Witnesses, § 406, p. 208. There are exceptions to this general rule, none of which are here applicable.

Although the witness Camp identified the exhibit as being an examination report of the company from June 14, 1956 through April 30, 1957, said exhibit was an uncertified, photostatic copy and there is nothing in the record to show that Camp was in charge of the records of the Insurance Department; that he had anything to do with said report, or that he was in any position to properly authenticate or identify it.

Assuming that the said exhibit, or any part thereof, was otherwise admissible, counsel should have laid the proper foundation for its introduction pursuant to and in accordance with Sections 26-101 and 26-102 of the Code.

■ Aside from the foregoing considerations and assuming that the document here in question was a public document and properly authenticated or identified as such, the rule governing its admissibility or inadmissibility is well set forth in the Massachusetts case of *Commonwealth v. Slavski,* 245 *Mass.* 405, 140 N. E. 465, 469, 29 A. L. R. 281, as follows:

"The principle which seems fairly deducible from them is that a record of a primary fact made by a public officer in the performance of official duty is or may be made by legislation competent *prima facie* evidence as to the existence of that fact, but that records of investigations and inquiries conducted, either voluntarily or pursuant to requirement of law, by public officers concerning causes and effects and involving the exercise of judgment and discretion, expressions of opinion, and making conclusions are not admissible as evidence as public records."

The foregoing quotation has been thrice quoted with approval by this court. *State v. Pearson,* 223 S. C. 377, 76 S. E. (2d) 151; *Griggs v. Driggers,* 230 S. C. 97, 94 S. E. (2d) 225; *Peagler v. Atlantic Coast Line R. Co.,* 234 S. C. 140, 107 S. E. (2d) 15.

No cases have come to our attention contrary to the foregoing rule which has been followed and applied by a number of other jurisdictions. *Steel v. Johnson,* 9 Wash. (2d), 347, 115 P. (2d) 145; *Gilbert v. Gulf Oil Corp.,* C. A. 4, 175 F. (2d) 705; *Ryan v. Campbell* (Mo.), 304 S. W. (2d) 825; *Swigart v. Swigart* (Ohio App.), 115 N. E. (2d) 871; *Hadley v. Ross,* 195 Okl. 89, 154 P. (2d) 939.

■ Even if Searson, the examiner who made and compiled the report, was a public officer within the foregoing rule, rather than a mere employee of the Department (which question we find unnecessary to here decide), a review of said report shows that it contains opinions, conclusions and findings on the part of the examiner, as well as certain statements of fact. Whatever the nature

of the position held by Searson was, it is clear that the report was not a record of any primary fact or facts relevant to any issue involved in this case. No reference was made in said report as to whether the defendant had or had not paid for his stock, nor was there any reference made to the particular methods of handling stock transactions by the defendant which gave rise to his prosecution.

Although some few of the stock transactions which form the basis of the prosecution occurred prior to April 30, 1957 (as early as February 1957), the vast majority of them occurred after that date. The scope of the examination shows that it was extended to cover the *financial position of the company as of April 30, 1957,* instead of the end of the calendar year 1956, to accommodate the management of a new company.

Under these circumstances, we cannot see where a failure on the part of the examiner to discover and report the stock transactions which occurred prior to April 30, 1957 has any relevancy or bearing whatsoever on the intent of the defendant, even if the report was otherwise admissible.

It should be unnecessary to point out that the admission or rejection of proffered evidence is within the discretion of the trial judge and his exercise of such will not be disturbed on appeal unless it can be shown that there has been an abuse of discretion, a commission of a legal error in its exercise and the rights of the appellant have been prejudiced thereby. *State v. Outen,* 237 S. C. 514, 118 S. E. (2d) 175.

This principle is particularly applicable with respect to rulings on the relevance or materiality of evidence, especially with respect to its remoteness to the issues involved in the trial. See *State v. Wideman,* 110 S. C. 394, 96 S. E. 688; *State v. McPhail,* 115 S. C. 333, 105 S. E. 638. We conclude that there was no error on the part of the trial court in excluding the proffered documents.

The defendant contends that the trial court erred in refusing to charge the jury as to the element of intent neces-

sary to sustain a conviction on the second count, and in failing to give a complete charge as to criminal responsibilty for the acts of agents.

The record shows that when the court, pursuant to statute, in the absence of the jury, requested if anything further was desired on the part of the defense, the following occurred:

"Mr. Mozingo: I call this to your attention, your Honor: You charged intent as to the first Section, but you did not charge that it was necessary that the second count required intent also.

"The Court: I defined 'fraud' to them, but I will call them back and charge them that the element of intent to commit fraud would have to be present. I charged them that fraud must be committed with willful intent; that fraud is malfeasance, a positive act resulting from a willful intent to deceive.

"Mr. Mozingo: Well, of course, we take exception to their requests.

"The Court: Very well, sir.

"Mr. Mozingo: But we have nothing further.

"The Court: All right, sir. Mr. Bailiff, tell the jury to go ahead and start their deliberations."

The requests on the part of the State, excepted to by the defense, which will be hereinafter discussed, were not related to counsel's initial statement that the court did not charge that it was necessary that the second count required intent also. With respect to that particular point, it appears that even though the court offered to call the jury back and charge them further, when the court called counsel's attention to the extent to which he had charged on that point, counsel apparently abandoned the point and did not pursue it further.

The record shows that the judge, immediately after stating to the jury what was charged in the second count of the indictment, correctly charged the jury as follows:

"Now 'fraud' is malfeasance, a positive act resulting from a willful intent to deceive. Fraud may consist of words, acts, or the suppression of material facts, with the intent to mislead or deceive. So, you see, there has got to be intent, and that intent has to be put into practice, either directly or through an agent."

Counsel for defense submitted no requests and made no contention, when given the opportunity to do so, that the charge was incomplete with reference to criminal responsibility for the acts of agents. The judge, however, at the request of the State, did charge the jury as follows:

"If you find that the defendant, in furtherance of a preconceived idea or plan formulated to dispose of personal stock, used methods, or those under his direction and control with his consent or knowledge, used methods, wherein the use of misrepresentations or failure to disclose material facts relative to such stock were resorted to in order to effect such sales, this fact may be considered by you in determining the guilt or innocence of the defendant."

The defendant excepted only generally to the foregoing charge, the contention here being that the language "or failure to disclose material facts relative to such stock" should not have been included; that Section 62-306 of the Code only makes it unlawful to defraud or obtain money by means of an affirmative false pretense, representation or promise, and that the failure to disclose material facts relative to the stock does not constitute an offense. An analysis of Section 62-306 shows the fallacy of the defendant's argument in this respect. The use of the disjunctive "or" in the statute shows that several types of conduct are made unlawful.

Of course, it is made unlawful to obtain money or property by means of any affirmative false pretense, representation or promise in connection with the sale of securities, but such is not the only thing that is made unlawful. The repeated use of the disjunctive "or" clearly shows that the

statute makes unlawful "The use or employment [of any person] of any fraud, fraudulent act, fraudulent practice, or fraudulent transaction or of any device, scheme or artifice to defraud", in connection with the sale of securities, whether or not the conduct of the party charged with the violation involved any affirmative false pretense, representation or promise.

At the request of the State, the court further charged as follows:

"If you find that the defendant knowingly participated in or accepted an option to buy shares of stock or a subscription to purchase shares of stock with no obligation on him to pay for such stock, this fact may be considered by you in determining whether or not a scheme was used to perpetrate a fraud on creditors and such other stockholders of the Francis Marion Life Insurance Company in the sale of stock of the company."

Again, the defendant only generally excepted to this charge, the condition here being that the charge was erroneous in that it was based upon a proposition of law stated in a civil case, as opposed to a criminal case; that there is no reference in either of the statutes, which the defendant was charged with violating, to stock option transactions, a fraud on creditors "or a fraud on other stockholders of a corporation." The lack of reference in the statute to stock options or fraud on either the creditors or stockholders of a corporation is, in our view, immaterial, There was evidence in the case to the effect that the defendant participated in a subscription for some 238,000 shares of capital stock of the corporation and that there was an accompanying resolution which, in effect, left to the option of the defendant the determination of whether he would, or would not pay for such stock.

Section 62-306 prohibits fraud in the sale of securities, whether the fraud be perpetrated upon creditors, stockholders or others. The charge excepted to was based upon the holding of this court in the case of *Industrial*

*Profit Sharing Bank v. Carlisle,* 158 S. C. 21, 155 S. E. 149, 81 A. L. R. 196, wherein this court recognized that a subscription to purchase shares of stock with no obligation on the subscribing party to pay for such stock may constitute fraud upon other stockholders or creditors, and that such did constitute fraud under the circumstances of that case.

Here, the evidence on behalf of the State tended to prove that the defendant perpetrated a fraud upon the purchasers of the stock, upon the company itself, upon its creditors, and upon other stockholders in the company. We find no error in the charges excepted to.

In considering exceptions to the charge of the trial judge, it is well settled that the entire charge must be considered as a whole. *State v. Clamp,* 225 S. C. 89, 80 S. E. (2d) 918; *State v. Daniels,* 231 S. C. 176, 97 S. E. (2d) 902. The charge when considered as a whole here shows that the court read the applicable statutes and adequately informed the jury as to the offenses charged and the elements of those offenses. The defendant, of course, is not entitled to raise questions concerning the sufficiency of the court's charge to the jury, for the first time, after rendition of verdict. If the defendant desired any additional instructions or amplifications, he should have requested the same when given the opportunity to do so. *State v. Jacobs,* 238 S. C. 234, 119 S. E. (2d) 735.

Other exceptions on the part of the defendant contend that the court erred in allowing the State to argue matters to the jury which were not in evidence, and in refusing to grant motions for a mistrial made by the defendant during the course of the trial.

Both of these contentions are addressed to matters which are largely within the wise discretion of the trial judge, and his rulings will not be disturbed unless there has been an abuse of discretion. *State v. Edgeworth,* 239 S. C. 10, 121 S. E. (2d) 248; *Wynn v. Rood,* 228 S. C. 577, 91 S. E. (2d) 276.

During the course of the argument counsel for defendant objected to the use of the term "alleged subscription" by the solicitor, and the further statement by the solicitor that the testimony of the witness Camp, with reference to a particular stock transaction, was that the defendant got certain shares which he did not pay one penny for, and that the record showed he did not pay one penny for it. One of the issues in the case was whether the subscription by the defendant was a bona fide and valid one. The record shows that the witness Camp testified that the records of the company did not show where the defendant paid anything for various stock certificates issued to him, but admitted on cross examination that the record did not affirmatively show that he did not pay therefor.

When this controversy developed in the course of the solicitor's argument, the court made the following ruling:

"The ruling of the court is that the issue is for the jury on the facts as testified to from the witness stand. I do not recollect the particular transaction Counsel is arguing about, but he is entitled to argue any reasonable inference from the testimony."

We think that the trial judge thus properly disposed of the issue.

The defendant made three motions for a mistrial in the course of the trial. At one point a witness for the State was cross examined concerning whether the witness had sold his stock or whether he still had it. On redirect examination the solicitor commenced with: "In fact you couldn't get over fifty cents a share—", being then interrupted by objection and a motion for a mistrial. Promptly upon objection the Court said: "That wouldn't be admissible, disregard that, Gentlemen." Under these circumstances this was certainly all that defendant was entitled to, particularly since it appears his counsel had opened up on cross examination of this and other witnesses the issue of the salability and, at least indirectly if not directly, the value of the stock.

At another point in the trial, the following occurred:
"Mr. Foard: If you paid $600.00, which you testified that you did, and if you received 100 shares of stock, which you say you received, and assuming that the company got the $600.00, but assuming further that somebody else got 500 shares for the money you paid, would you be satisfied?

"A. Well, I don't know, but if the Company got the $600.00, then how could somebody else get the 500 shares?

"Mr. Mozingo: That's right.

"Mr. Foard: That's just the point: how could they do it? We are going into that later.

"Mr. Mozingo: I object to that statement and move for a mistrial, your Honor. He is trying to prejudice this jury by talking about what all he is going to do.

"The Court: Let me say this, gentlemen: Both of you are good lawyers. Now, please ask the questions properly and don't make any side remarks. This isn't a sideshow; this is a serious matter. And this is not a laughing matter, Gentlemen of the Jury. There has been a lot of laughing here, but it is a serious matter. Now, conduct yourselves properly."

We see no abuse of discretion or error in refusing to grant a mistrial for this reason. The solicitor's remarks were initiated by an improper remark by the defense counsel. The court sufficiently admonished defense counsel and the solicitor for their departure from strict propriety. Moreover, there was no prejudice to defendant, as abundant proof was offered supporting the solicitor's remarks.

Another motion for a mistrial was made when in the course of redirect examination of one Crawford, who had purchased stock through an agent of the defendant by the name of Eddie Gaines, and who testified with respect to the contract by which he purchased as follows:

"I would like to add something else: He has his wife's name signed to that when (s) he wasn't an agent to sell it."

This statement from the witness was in response to no question asked by the solicitor. Moreover, the contract

signed, "Nancy B. Gaines, a Company Representative" was previously brought in issue by defense counsel on cross examination; and was then offered in evidence by the State, without objections.

Upon a motion being made for mistrial, the court promptly said: "The motion is refused. You gentlemen pay no attention to the statement of the witness. It has nothing to do with the case as far as I can see."

Under these circumstances, we see neither any prejudice to the defendant, nor any abuse of discretion on the part of the trial judge.

Considering that the State's case consumed three days, during which voluminous testimony and documents were presented to the jury, it would be unreasonable to expect that the trial could be concluded with absolute perfection on the part of all concerned, without one or more minor irregularities. Under all of the circumstances, the several instances upon which the defendant moved for a mistrial were relatively trivial and certainly the prompt and correct disposition of these matters by the trial judge removed any possibility of prejudice to the defendant.

In conclusion, we have considered the record as a whole in order to determine whether there was any prejudice to the defendant, and have concluded that the defendant had a fair and impartial trial, and that there was no miscarriage of justice. If there be any errors in the record, they are inconsequential and harmless, it appearing from the record that the conviction is clearly correct on the merits and that no other verdict than guilty could reasonably have been returned on the competent, uncontroverted evidence adduced by the State. See *State v. Burnett,* 226 S. C. 421, 85 S. C. (2d) 744, and the cases therein cited and reviewed.

Affirmed.

TAYLOR, C. J., and MOSS, LEWIS and BRAILSFORD, JJ., concur.