## 19961

The STATE, Respondent, v. Donald Woodrow GALLOWAY et al., Appellants

(211 S. E. (2d) 885)

*Messrs. W. Richard James, Jack H. Lynn* and *H. F. Partee,* of Greenville, *for Appellants,*

*Messrs. Daniel R. McLeod, Atty. Gen., Robert M. Ariail, Asst. Atty. Gen., Sidney S. Riggs, III,* and *Wade S. Koll, Staff Attys.,* of Columbia, and *Thomas W. Greene, Sol.,* of Greenville, *for Respondent,*

February 12, 1975.

BRAILSFORD, Justice:

The charges against the three appellants arose from an affray which took place at Brissey's Garage in the City of Greenville, on May 9, 1973. According to the State's witnesses, the owner of the garage, who was also the popular coroner of Greenville County, was viciously attacked by the three young men when he refused to surrender to one of them an impounded automobile without a release from the City Police Department. Within a few minutes after the arrival of police officers at the scene, Mr. Brissey suffered a fatal heart attack.

The three men were indicted for assault and battery with intent to kill. Galloway was found guilty as charged. Robin-

son and Dennis were convicted of assault and battery of a high and aggravated nature. All three defendants have joined in an appeal to this Court. We consider *seriatim* the three questions argued in the brief.

"1. *Did the Court err in denying defendants' motion for a change of venue?*"

The defendants contend that they were deprived of a fair trial by prejudicial pretrial publicity coupled with the victim's popularity in Greenville County.

It is axiomatic that a motion for change of venue on these grounds rests in the sound discretion of the trial judge and that his denial thereof will not be disturbed on appeal in the absence of a clear showing of abuse of discretion and accompanying prejudice to the defendants. We find no such showing on this record.

A hearing on this motion was had before the judge at which witnesses were examined and exhibits introduced. It appears therefrom that the incident at the garage and the death of the popular coroner were publicized extensively by all local news media for several days. In these early publications and broadcasts the facts were stated according to the versions of garage attendants and police officers. These were unfavorable to the defendants and inconsistent with their testimony at the trial. However, with minor exceptions which need not be recounted, these publications of the alleged details of the affray took place some five months before the trial, and the witnesses called in support of the motion testified that they had heard no discussion of the case since soon after Mr. Brissey's death. In short, there was no substantial evidence that whatever prejudice against the defendants had been engendered by the publicity given to the case in May was yet active in October when the motion was refused.

In addition, a searching *voir dire* examination of the jurors, which was conducted by the trial judge, failed to

elicit answers suggesting the existence of prejudice against the defendants. We find nothing in the record on which it could soundly be held that the trial judge abused his discretion in refusing this motion. See *State v. Crowe,* 258 S. C. 258, 188 S. E. (2d) 379 (1972), and *State v. Bennett,* 256 S. C. 234, 182 S. E. (2d) 291 (1971).

"2. *Did the Court err in refusing to charge the jury that 'a person has a right to be on a public sidewalk and cannot be ejected under the color of right of ownership by an appendant landowner who is exercising a right of ownership over the said public roadway or walkway.'?"*

Under the State's version of the facts, the defendants made an unprovoked attack on the proprietor within the garage building, where most of the difficulty took place. Under the defendants' testimony, Mr. Brissey attacked them in the public street, and their resort to force was in the exercise of their right of self-defense. The record leaves unresolved whether an unpaved area between the garage and street, where part of the difficulty may have taken place, was part of the premises or was a public sidewalk.

There was no error in refusing the requested instruction which assumed the existence of facts either unsupported by testimony or disputed, thus amounting to an impermissible charge on the facts. Constitution of South Carolina, Art. V, Sec. 17; *Durant v. Stuckey,* 221 S. C. 342, 70 S. E. (2d) 473 (1952) ; *Jones v. Charleston & W. C. Ry. Co.,* 61 S. C. 556, 39 S. E. 758 (1901).

Furthermore, assuming the defendants' infliction of violent injuries on the garageman, which is implicit in the verdict, the burden was upon them to establish self-defense. The adequacy of the judge's instructions on the four elements of this defense is unchallenged. A further instruction that a proprietor's right to eject an intruder from his premises does not extend to an adjacent public way, would have

added nothing to the jury's understanding of the law applicable to the defense and was not required.

"3. *Did the Court err in 'allowing the State to impeach defendants' witness on collateral matter and without putting defendants' witness on notice.'?*"

The question relates to the defendants' witness Church. She testified that from her place of employment, across a stream bordered by trees and about 300 yards away, her attention was attracted to Brissey's garage on the occasion in question. She looked out of a window and saw in the street in front of the garage a tall gray-haired man, with a stick in his hand, facing a tall shirtless long-haired young man. She saw the older man strike the younger with the stick, which she identified as a piece of 2 x 4, and saw the young man respond by striking his assailant twice in the face with his fists. She did not recognize either man, but realized shortly thereafter, on hearing a news broadcast about Brissey's death, that the older man had been he; and, upon hearing a later broadcast about the arrest of the defendants, realized that the young man was her sister's son, the defendant Galloway.

On cross-examination, the solicitor elicited from Mrs. Church that before recognizing either of the antagonists, she had thought that the blow struck by the older man "was a pretty bad thing to do." He then asked her whether, upon learning of Brissey's death and before knowing of the involvement of her nephew, she had not exclaimed to three named co-workers, "Why did they do away capital punishment? He was a good man." Upon objection to this line of questioning, the jury was excused. After a long colloquy between counsel and the court, the judge allowed the question and ruled that Mrs. Church's co-workers could be called to contradict her denial of having made the statement. Thereupon, the three co-workers to whom Mrs. Church's attention had been directed, testified that she did make the

statement. They also testified to facts which, if believed, made it most unlikely that Mrs. Church had made the observations to which she testified.

The defendants contend that the admission of this testimony to contradict Mrs. Church's denial of having made the exclamation was error in two respects. First, the statement related to a collateral matter as to which the State was bound by the witness' answer; second, the witness was not put on notice that she would be contradicted if she denied making the statement.

The latter claim is based upon the misconception that the required foundation for contradicting a witness by evidence of a prior inconsistent statement includes express notice to the witness that he will be contradicted if he denies making it. This is not the law. The requirement of notice is met when the cross-examiner advises the witness of the substance of the prior statement and the time when, the place where and the person to whom it was made. The notion that such foundation must include an expression of the cross-examiner's intention to contradict was advanced by appellant in *State v. White,* 15 S. C. 381 (1880), and expressly repudiated by the court. Apparently, this rather prevalent trial superstition has no more substantial basis than the statement in *State v. Brock,* 130 S. C. 252, 126 S. E. 28 (1925), that the solicitor cross-examined the defendant as to a prior inconsistent statement "after notifying the witness that he proposed to contradict him . . .." We find no support for it in our decisions, 19 West's South Carolina Digest, Witnesses, —388(10) (1952), which are in accord with the general law that notice as to substance, time, place and person is sufficient foundation for contradicting testimony. McCormick on Evidence, Sec. 37 (1954); Wigmore on Evidence, Sec. 1029 (3d ed. 1940).

This leaves for consideration the defendants' contention that it was error to allow the testimony of Mrs. Church's co-workers to contradict her as to a

collateral matter. The rule that a cross-examiner is concluded by the answer of a witness to such a question has long been the law of this State. *State v. Brock,* 130 S. C. 252, 126 S. E. 28 (1925), and cases therein cited. The test of collateralness applied in *Brock* was thus stated:

"Would the cross-examining party be entitled to prove the fact as a part of, and as tending to establish, his case? If he would be allowed to do so, the matter is not collateral; but, if he would not be allowed to do so, it is collateral." 126 S. E. at 29.

This test was adequate in *Brock,* where the sole purpose of the State was to discredit the witness by contradicting his answer on an immaterial point, but it will not suffice in all cases.

Here, the statement, attributed to Mrs. Church was made on hearing the news of Brissey's death, within a few minutes of the confrontation to which she testified and before she knew of the involvement of her kinsman. Conceding that the testimony could not have been offered in proof of the case against the defendants, the State insists that it should be received for consideration by the jury as evidence of the witness' state of mind, immediately after the event, inconsistent with her testimony identifying Brissey as the aggressor. The State does not offer the testimony in contradiction to discredit the witness generally, rather it seeks to discredit her testimony on the merits of the case.

The decision which, according to Professor Wigmore, spawned the test of collateralness applied in *Brock,* recognized that it would not suffice for all cases. We quote: "It must be connected with the issue as a matter capable of being distinctly given in evidence, *or* it must be so far connected with it as to be a matter which, if answered in a particular way, would contradict a part of, the witness' testimony . . . ." (Emphasis added.) *Attorney-General v. Hitchcock,* 1 Exch. 99 (1847); III Wigmore on Evidence, Sec. 1020, at 692.

The following statement of the rule from our own jurisdiction is also quite broad enough to sustain the allowance of the contradiction in this case:

"The general rule is, that the answer of a witness, to an immaterial question, cannot be contradicted to impeach his credit; but if the question is in any wise material to the issue, his answer can be contradicted." *Smith v. Henry,* 2 Bailey's Law 118, 127 (1831).

In *Commonwealth v. Jackson,* Ky., 281 S. W. (2d) 891 (1955), the defendant's wife testified that he had shot in self-defense. Admitting contradictory testimony that the wife had stated shortly after the shooting that the defendant had fired during a "crazy spell," as he had done once before, the court said:

"Obviously the credibility of a witness with respect to a material issue in a case is not a collateral, immaterial or irrelevant matter. Therefore, if a prior statement bears upon the story of a witness with such force and directness as to give it appreciable value in determining whether or not that story is true, such statement may be introduced against him." 281 S. W. (2d) at 894-95.

In this case, the testimony sought to be impugned is material, while the impugning testimony, except for that purpose, is not. The true question is one of relevance. If the exclamation attributed to Mrs. Church by her co-workers is inconsistent with her testimony on a disputed issue in the case, then the jury should have the benefit of the former in determining the weight to be accorded the latter. The trial judge is neccessarily vested with considerable latitude in determining, *prima facie,* this question of relevance. We are not convinced that he erred in admitting the testimony complained of for consideration by the jury.   ·

Affirmed.

Moss, C. J., and LEWIS, BUSSEY and LITTLEJOHN, JJ., concur.