0855

Steven George AAKJER, Jr., Appellant v. Steven SPAGNOLI, Respondent.
(352 S. E. (2d) 503)

Court of Appeals

*James P. Stevens, Jr., of Stevens, Stevens, Thomas, Hearn & Hearn, of Loris, for appellant.*

*Thomas C. Brittain and Cynthia Graham Howe, of Van Osdell, Lester, Stewart, McCutchen & Brittain, of Myrtle Beach, for respondent.*

Jan. 12, 1987.

SANDERS, Chief Judge:

Appellant Steven Aakjer brought this action against respondent Steven Spagnoli for damages arising out of an automobile accident. The jury returned a verdict for Mr. Spagnoli. Mr. Aakjer appeals. We affirm.

The accident out of which this lawsuit arose occurred at approximately 10 p.m. on April 16, 1983 in Horry County. Mr. Aakjer was traveling east on Highway 501 toward Myrtle Beach when his car ran out of gas. He got out of the car and was pushing it forward when Mr. Spagnoli's car struck him from behind.

The highway patrolman who investigated the accident testified that Mr. Aakjer told him that he was trying to push his car to a convenience store three or four hundred feet down the road. Mr. Aakjer testified that he was steering his car to the right trying to get it off the road as quickly as possible. He estimated that forty-five seconds elapsed between the time he started pushing and when he was struck from behind. His car was still in the right hand lane of travel when it was hit.

Mr. Spagnoli testified that, although his view was unobstructed and he could see about 500 feet in front of him, he did not see Mr. Aakjer's car until just before he hit it and the accident happened in "a flash second."

One of the more hotly contested issues at trial was whether the emergency flashers on Mr. Aakjer's car were illuminated. Mr. Aakjer testified that the flashers were on. Mr. Spagnoli testified that they were not.

The highway patrolman testified that he did not recall seeing any flashing lights on Mr. Aakjer's car after the accident.

Keith Munger, a witness for Mr. Aakjer, testified that on the night of April 16, 1983 he saw a car in the eastbound lane

of Highway 501 with its flashers on and he saw several cars pass that car without hitting it. He further testified that he saw the flashers when he was a mile from the impact site.

Eugene Fowler, who towed Mr. Aakjer's car into a service station that night, testified that all four of the emergency flashers on the car were blinking when he got to the scene.

David Keys, a witness for Mr. Spagnoli, testified that, on April 16, 1983, between 10 and 11 p.m., he "just about ran into the back of a man that was pushing his car down the middle of 501." He further testified that "[t]here was no lights anywhere on the vehicle."

Dr. Roland Barrett, a mechanical engineer, testified as an expert in accident reconstruction for Mr. Aakjer. He examined the lights from Mr. Aakjer's car and testified that "either the flashers, turn signal, or brake light was on at the moment of impact."

Other relevant facts will be discussed as necessary throughout this opinion.

## I

This lawsuit was initially tried in March 1984, resulting in a verdict for Mr. Spagnoli. The trial judge, "sitting as the thirteenth juror," granted Mr. Aakjer's motion for a new trial.

Prior to the start of the second trial, Mr. Aakjer made a motion that the trial judge prohibit testimony regarding injuries sustained by the passengers in Mr. Spagnoli's car, other pending or anticipated lawsuits arising from the accident and the fact that the case had been previously tried with a verdict for Mr. Spagnoli. The trial judge ruled that he would instruct the attorneys and witnesses not to discuss the previous trial but that he would allow the use of prior testimony for impeachment purposes. He did not definitively rule one way or the other on the first two aspects of Mr. Aakjer's motion.

Mr. Aakjer argues on appeal that his motions for a mistrial and a new trial should have been granted because "repeated references to the prior trial diverted the jury's attention from the trial of this lawsuit."

In fact, the record reveals that the "repeated references" complained of by Mr. Aakjer number, at most, only three.

During the cross-examination of a medical doctor and of the engineer offered by Mr. Aakjer, counsel for Mr. Spagnoli asked about prior testimony. It is not at all clear that he was speaking of testimony given in an earlier trial. The jury could just as easily have understood him to have been referring to prior deposition testimony given by these two witnesses.

During the cross-examination of Mr. Keys by counsel for Mr. Aakjer, the witnesses answered a question with the gratuitous comment "we straightened that out on the last case." The trial judge immediately admonished Mr. Keys to "just answer the question."

The cross-examination of a witness to test his credibility is largely within the discretion of the trial judge. *McMillan v. Ridges*, 229 S. C. 76, 91 S. E. (2d) 883 (1956). Every witness under cross-examination may be asked whether he has made any former statement relative to the subject matter of the action and inconsistent with his present testimony. *Elliott v. Black River Electric Cooperative*, 223 S. C. 233, 104 S. E. (2d) 357 (1958).

In our opinion, the trial judge did not abuse his discretion in allowing the cross-examination by counsel for Mr. Spagnoli of the medical doctor and engineer.

Futhermore, the references to the prior trial were so vague that Mr. Aakjer could not have been prejudiced. The jury could hardly have guessed that the entire lawsuit had been tried before, much less that the outcome had been unfavorable to Mr. Aakjer. *See JKT Company, Inc. v. Hardwick*, 274 S. C. 413, 419, 265 S. E. (2d) 510, 513 (1980), *appeal after remand*, 284 S. C. 10, 325 S. E. (2d) 329 (Ct. App. 1984) ("An error not shown to be prejudicial does not constitute grounds for reversal.").

II

Mr. Aakjer next argues that his motions for a mistrial and a new trial should have been granted because of references made by witnesses and counsel to injuries sustained by the passengers in Mr. Spagnoli's car.

Mr. Aakjer sought damages for depression, mental anguish and mental anxiety allegedly resulting from the physical injuries which he suffered in the accident. Counsel for

Mr. Spagnoli cross-examined Mr. Aakjer about his knowledge of the injuries suffered by the passengers in Mr. Spagnoli's car. Counsel for Mr. Aakjer objected to this line of questioning on the ground of relevancy. The trial judge allowed the questioning for the limited purpose of showing Mr. Aakjer's mental state following the accident.

On direct examination and over the objection of Mr. Aakjer, Mr. Spagnoli gave an account of the injuries suffered by the passengers in his car.

In his closing argument, counsel for Mr. Aakjer also referred to the fact that some of the passengers in Mr. Spagnoli's car could not walk after the accident, comparing their injuries to the injuries suffered by Mr. Aakjer. The trial judge immediately called counsel to the bench and warned him to make no further references to the other injuries.

On appeal, Mr. Aakjer contends that the references to the injuries sustained by the passengers were irrelevant and served to inflame the jury and improperly divert their attention from the lawsuit at hand. We are unpersuaded by this argument.

The determination of the relevancy of evidence is largely within the discretion of the trial judge. *Crowley v. Spivey,* 285 S. C. 397, 329 S. E. (2d) 774 (Ct. App., 1985). "Evidence which tends to make more or less probable some matter in issue and to bear directly or indirectly thereon is relevant." *Associate Management, Inc. v. E. D. Sauls Construction Co.,* 279 S. C. 219, 221, 305 S. E. (2d) 236, 237 (1983).

We find no abuse of discretion under the circumstances. Mr. Aakjer admitted that he felt concern for the other people hurt in the accident. Thus, his knowledge of their injuries was at least of some relevancy to the issue of whether his mental anguish was caused by his injuries, as he alleged, or by the injuries of the other people involved in the accident.

### III

During cross-examination of Mr. Aakjer, Mr. Spagnoli's attorney made at least one reference to a page in the transcript of the earlier trial. After the close of testimony that day, one juror asked the bailiff "what the book was they keep referring to." The trial judge overheard the question

and asked the juror to repeat it. The juror did so, further noting that "[i]t's like it's already been played before, the whole thing."

The following morning, outside of the presence of the other jury members, the trial judge asked the juror if he had discussed the matter with the other jurors. The juror replied, "I was just asking about that just when I was called out here. I said, you know, seems like there's been some kind of book or something." The trial judge then excused the juror from the case and asked the other jurors if anyone had tried to discuss the case with any of them and whether any of them had any independent knowledge which would prevent them from giving both sides a fair trial. No juror answered in the affirmative. Mr. Aakjer moved for a mistrial. The trial judge denied the motion. The trial proceeded with an alternate juror taking the place of the juror who had been excused.

Mr. Aakjer contends that the events just related amounted to juror misconduct which tainted the entire jury and that a mistrial should have been granted.

"The question of whether or not a motion for a mistrial should be granted rests in the trial judge's sound discretion, and his ruling on such motion will not be disturbed unless abuse of discretion is shown." *Tucker v. Reynolds,* 268 S. C. 330, 334, 233 S. E. (2d) 402, 404 (1977). On a motion for mistrial the moving party has the burden to show not only error but resulting prejudice. *Keller v. Pearce-Young-Angel Co.,* 253 S. C. 395, 171 S. E. (2d) 352 (1969).

Here, there is no showing that Mr. Aakjer was prejudiced by the conduct of the juror. Even if the members of the jury recognized that the case had been tried before, they had no way of knowing which side had prevailed. That knowledge, therefore, would have impacted equally on both Mr. Spagnoli and Mr. Aakjer.

IV

During cross-examination, counsel for Mr. Aakjer asked Mr. Keys a series of questions regarding his brother having been in the hospital on the date of the accident. These

questions and the answers given to them by Mr. Keys appear in the record as follows:

> Q. Mr. Keys, let me ask you this. I believe your brother was in the hospital, is that right, sir?
> A. Yes sir.
> Q. And you had been out to see him?
> A. Yes sir.
> Q. And you were going back to get your wife and come back to the hospital, I believe, is that right, sir?
> A. Yes sir, I was planning on doing that.

The record does not reveal any testimony by Mr. Keys on direct examination regarding his brother having been in the hospital on the night of the accident.

Mr. Aakjer thereafter sought to introduce medical records, presumably to show that Mr. Keys' brother was not in the hospital on the night of April 16, 1983. The trial court ruled that these medical records were privileged and therefore inadmissible. Later, in ruling on Mr. Aakjer's motion for a new trial, the trial judge noted that he considered the use of the medical records to be an impermissible attempt to impeach the witness on a collateral matter.

Mr. Aakjer argues that the trial judge erred in not allowing him to introduce these records to impeach the testimony of Mr. Keys.

There is no physician-patient privilege in South Carolina. *Peagler v. Atlantic Coast Line Railroad Co.*, 232 S. C. 274, 101 S. E. (2d) 821 (1958). We do not know of any other privilege which would be applicable here. However, this does not mean that the ruling of the trial judge to exclude the medical records must be reversed.

The trial judge further ruled that Mr. Aakjer could not introduce the medical records because it would constitute impeachment on a collateral matter. A witness may be contradicted for the purposes of impeachment only as to matters relevant to the issue. *Smith v. Henry*, 18 S.C.L. (2 Bail.) 118 (1831). Impeachment of a witness's credibility by asking questions not relevant to the case in chief with a view of obtaining contradictory or inconsistent statements is limited to cross-examination of the witness sought to be impeached. *Martin v. Dunlap*, 266 S. C. 230, 222 S. E. (2d) 8 (1976). This right does not extend to putting another

witness on the stand to contradict him as to such collateral matters. *Id.*

It is not necessary for us to determine whether the use of the medical records would have constituted impeachment on a collateral matter because it is apparent from the record that the testimony of Mr. Keys was thoroughly impeached otherwise.

Mr. Keys testified that there were no lights anywhere on the car he saw. Mr. Aakjer testified that the emergency flashers on his car were on. Mr. Munger testified that the car he saw had its flashers on. Mr. Fowler testified that when he arrived at the scene the flashers on Mr. Aakjer's car were on. Dr. Barrett testified that Mr. Aakjer's car had it emergency flashers, turn signal or brake light on when it was struck.

Mr. Keys testified in his desposition that it was raining on the night he saw the car being pushed. At trial he testified that he was not sure if it was raining or not or whether the road was wet or dry. The highway patrolman, Mr. Munger and Mr. Spagnoli testified that the night of April 16, 1983 was dry and clear.

Mr. Keys further testified in his deposition that the car he saw that night had a dark top. He testified at trial that the car "was a dark car with a light top." He offered no explanation when confronted with this inconsistency. The highway patrolman testified that Mr. Aakjer's car was red with a white top.

Mr. Keys conceded on cross-examination that he did not know whether he had seen Mr. Aakjer's car or some other car.

Error in the exclusion of evidence is of no avail if testimony to the same effect had been or was afterwards allowed. *Smith v. Winningham,* 252 S. C. 462, 166 S. E. (2d) 825 (1969). "[I]t is not error for the trial judge to exclude evidence which is merely cumulative." *Peagler v. Atlantic Coast Line Railroad Co.,* 234 S. C. 140, 170, 107 S. E. (2d) 15, 31 (1959).

Assuming, without deciding, that the trial judge erred in not allowing the introduction of the medical records, we conclude that this was harmless error in view of the other evidence which was admitted to impeach the testimony of Mr. Keys.

## V

During the closing argument of counsel for Mr. Aakjer, Mr. Keys, who was in the courtroom, apparently raised his hands. Mr. Aakjer argues that the trial judge erred in not granting his motions for a mistrial and a new trial based on this conduct. We conclude that his argument on this point is manifestly without merit. *See* Section 14-8-250, Code of Laws of South Carolina, 1976, as amended ("'[T]he Court need not address a point which is manifestly without merit.").

## VI

Following the charge to the jury, counsel for Mr. Aakjer reminded the trial judge that he had not given a curative charge to the jury instructing them not to consider the injuries sustained by the passengers in Mr. Spagnoli's car. The trial judge stated that he would bring the jury back and instruct them that they were only concerned with this lawsuit and the evidence before them. He failed to do so.

Mr. Aakjer argues on appeal that the failure of the trial judge to give the promised instruction constitutes reversible error.

We previously held that the references to the injuries suffered by the passengers in Mr. Spagnoli's car were not improper in view of Mr. Aakjer's claim for damages for depression and mental anguish. Thus, the charge requested by Mr. Aakjer would not have been appropriate and the charge promised by the trial judge would not have been necessary.

## VII

Mr. Aakjer next argues that the trial judge erred in charging the jury as to the law of sudden emergency. Mr. Aakjer contends that this doctrine is inapplicable to the facts of this case.

The trial judge charged the jury as follows:

> [I]f an automobile driver, who, by the negligence of another, and not by his own negligence, is suddenly placed in an emergency, and compelled to act instantly to avoid a collision, that person may not be guilty of

negligence, if he makes such a choice as a person of ordinary reason and prudence, placed in the same position as he might make, even though he did not make the wisest choice.

The language of this charge comes directly from the decision of our Supreme Court in *McVey v. Whittington*, 248 S. C. 447, 456, 151 S. E. (2d) 92, 97 (1966). The facts of that case are similar to the facts in the instant case.

In *McVey*, the plaintiff was assisting four other people in pushing a stalled car off the highway. A car being driven by the defendant ran into the rear of the car which the plaintiff was pushing causing her to be crushed between the two cars. The stalled car had a white top and the plaintiff was wearing white pants. There was testimony that the rear lights on the stalled car were on, but the defendant testified that he did not see any lights until just prior to impact. The Supreme Court held that the charge on sudden emergency was proper under these facts.

Mr. Aakjer points out that there was no evidence that Mr. Spagnoli's vision was obstructed, whereas, in *McVey* there was testimony that the defendant's ability to see the lights on the stalled car was obstructed by the people pushing it. However, in the instant case, there was conflicting testimony as to whether the lights or emergency flashers on Mr. Aakjer's car were illuminated. Given the conflicting testimony and Mr. Spagnoli's testimony that he did not see Mr. Aakjer's car until just before he hit it, the charge on the law of sudden emergency was proper.

Mr. Aakjer further contends that the trial court erred in charging Code Section 56-5-2510. This section provides that "no person shall stop, park or leave standing any vehicle, whether attended or unattended, upon the roadway outside a business or residential district when it is practicable to stop, park or leave the vehicle off the roadway." This section further provides that it does "not apply to the driver of any vehicle which is disabled to such extent that it is impossible to avoid stopping and temporarily leaving the vehicle in such position."

Mr. Aakjer contends that because his car was disabled, Section 56-5-2510 was not applicable.

There was conflicting evidence on the question of whether

Mr. Aakjer was pushing his car down the road to the convenience store or trying to push it off the road. Mr. Aakjer testified that at least forty-five seconds elapsed between the time he ran out of gas and when he was hit from behind.

The burden of proving the necessity for stopping a ■ vehicle on the main traveled portion of a highway is on the person who makes such a stop. *Gray v. Barnes*, 244 S. C. 454, 137 S. E. (2d) 594 (1964).

Under the evidence in the instant case, it was up to ■ the jury to determine whether Mr. Aakjer stopped and left his car on the roadway when it was practicable for him to have stopped it off the roadway. There was also a jury question as to whether it was impossible for Mr. Aakjer to have avoided stopping and leaving his car in such position. *See Dorsey v. Brockington*, 277 S. C. 438, 289 S. E. (2d) 161 (1982) ("Whether one has removed his car from the road as far as practical, or whether one is temporarily prevented from removing his car because of disability to the vehicle, are ordinarily questions for the jury where there is conflicting testimony.").

Mr. Aakjer also argues that the trial judge erred in ■ failing to give one of his requested charges concerning the duty of motorists to use reasonable care to avoid injury to persons working on or about a disabled vehicle. We are convinced by our review of the charge given by the trial judge that the standard of care required of Mr. Spagnoli was adequately covered. *See Priest v. Scott*, 266 S. C. 321, 223 S. E. (2d) 36 (1976).

## VIII

Mr. Aakjer's final argument is that "the trial judge erred in refusing [his] motion for a new trial because the totality of the circumstances and events which occurred during the trial improperly inflamed the jury and diverted its attention from the trial of this lawsuit, thereby denying his right to a fair and impartial trial."

Litigants, whether plaintiffs or defendants, are en- ■ titled to fair trials but not perfect trials. *Smoak v. Seaboard Coast Line Railroad Company*, 259 S. C. 632, 193 S. E. (2d) 594 (1972). "If a new trial was required every time a flaw or mere possibility of prejudice occurred, litiga-

tion would be unduly prolonged." *Id.* at 640, 193 S. E. (2d) at 598.

"Perfection in human behavior is an unrealistic expectation." *Langley v. Boyter*, 284 S. C. 162, 188, 325 S. E. (2d) 550, 565 (Ct. App. 1984), *rev'd on other grounds*, 286 S. C. 85, 332 S. E. (2d) 100 (1985). This principle applies as well to trial judges as it does to lesser mortals.

The record as a whole reveals that Mr. Aakjer received a fair trial, if not perfect one. In fact, he has now had two complete trials, with two different juries reaching the same result. The irregularities he relies on clearly do not warrant granting him yet a third trial.

Affirmed.

GARDNER and SHAW, JJ., concur.