504 S.E.2d 338

**The STATE, Respondent,**

v.

**William Rawls MIZELL, Appellant.**

**No. 2872.**

Court of Appeals of South Carolina.

Submitted June 2, 1998.

Decided July 20, 1998.

Rehearing Denied Sept. 18, 1998.

274

William I. Diggs, Myrtle Beach, for appellant.

Attorney General Charles M. Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney General Harold M. Coombs, Columbia; and Solicitor Ralph J. Wilson, Conway, for respondent.

ANDERSON, Judge:

William Rawls Mizell was convicted of committing a lewd act upon a minor child, first degree criminal sexual conduct (CSC) with a minor, and second degree CSC with a minor. The trial judge sentenced Mizell to five years for committing a lewd act upon a minor child; twenty years for first degree

CSC with a minor; and fifteen years for second degree CSC with a minor, to run concurrently. We affirm.[1]

## *FACTS/PROCEDURAL BACKGROUND*

William Mizell (Mizell) married Vanessa Mizell in 1990. Christina Baker, Mrs. Mizell's daughter from a previous marriage, lived with them. According to Christina, when she was nine years old, Mizell "started feeling" on her chest. When Christina was "about nine and a half or ten" years old, Mizell would go into Christina's bedroom in the middle of the night when she was sleeping, put his hand down her panties, and stick his finger inside her vagina. This occurred approximately once or twice per week. After Mizell started "fingering" Christina, she told her best friend, Katie Peterson, but asked Katie not to tell anyone. Mizell also tried to get Christina to "feel on him" and "feel on" herself. Mizell warned Christina not to tell anyone about the abuse because no one would believe her. When Christina was twelve years old, she reported the abuse to her best friend's mother.

On August 31, 1995, Dr. Carol Rahter observed Amanda Steck interviewing Christina. On that same day, Dr. Rahter conducted a physical examination of Christina. Dr. Rahter's "feeling at the end of both the witness interview and the exam was that [Christina] had been a victim of sexual abuse, specifically digital penetration."

## *ISSUES*

I. Did the trial court err in refusing to allow Mizell to present at trial character evidence of his reputation for truthfulness and veracity?

II. Did the trial court err in allowing the State to present reply testimony?

## *LAW/ANALYSIS*

### I. Rule 404(a)(1), SCRE

■ Mizell argues the trial court erred in refusing to allow him to introduce evidence of his reputation for truthfulness

---

1. Because oral argument would not aid the Court in resolving the Issues, we decide this case without oral argument.

and veracity. He claims he offered this character evidence as "a legitimate and relevant part of" his defense to the charges against him.

Mizell did not testify at trial. However, he presented evidence from several friends and neighbors that he was a good family man and his reputation and character in the community were excellent. During the direct examination of one witness, Nancy McDonaugh, defense counsel asked McDonaugh if she knew Mizell's reputation in the community for truthfulness. She testified he had never lied to her and she was not aware of any reputation that he was a liar.

The State objected to the line of questioning and the court conducted a hearing outside the presence of the jury. Defense counsel argued he could present evidence concerning the defendant's reputation for truth and veracity without the defendant taking the stand. After a review of the South Carolina Rules of Evidence, the court held it would not allow any more testimony concerning Mizell's reputation or character for truthfulness or veracity in the community until he took the stand and it was placed in issue. However, the court ruled the defense could introduce evidence relating to a particular character trait that was an element of the crime charged. Defense counsel made a proffer that each defense witness was ready to testify to Mizell's good reputation for truthfulness and veracity in the community. The court instructed the jury to disregard McDonaugh's testimony regarding Mizell's reputation for truthfulness.

To evaluate the propriety of the trial court's decision not to allow Mizell to present evidence of his character for truthfulness, we look first to the language of Rule 404(a)(1) of the South Carolina Rules of Evidence,[2] which provides as follows:

(a) Character evidence generally. Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:

(1) Character of accused. Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same.

---

2. Because this case was tried in 1996, the South Carolina Rules of Evidence, which became effective September 3, 1995, govern.

Thus, subsection (1) provides an exception to the general rule that character evidence is not admissible at criminal trials. Rule 404(a)(1), SCRE, is identical to the federal rule and is consistent with the law in South Carolina. Rule 404(a)(1) note, SCRE.

Under the South Carolina rule, like the federal rule, the accused may introduce evidence as to a pertinent trait of his character regardless of whether or not the accused testifies at trial. *See* Michael H. Graham, *Handbook of Federal Evidence,* Commentary to Federal Rule of Evidence 404(a)(1) (4th ed.1996); 29 Am.Jur.2d *Evidence* § 367 (1994). Rule 404(a)(1) permits such evidence when a defendant demonstrates he or she possesses a character trait that relates to the alleged offense—a "pertinent" trait of his or her character. *See People v. Miller,* 890 P.2d 84 (Colo.1995).[3] *See also* Fred Warren Bennett, *Is the Witness Believable? A New Look at Truth and Veracity Character Evidence and Bad Acts Relevant to Truthfulness in a Criminal Case,* 9 St. Thomas L.Rev. 569 (1997) (criminal defendant may offer evidence of pertinent trait of his character to support inference he was unlikely to have committed charged crime).

Several courts have interpreted the word "pertinent" to be synonymous with "relevant." *See United States v. Angelini,* 678 F.2d 380 (1st Cir.1982); *United States v. Hewitt,* 634 F.2d 277 (5th Cir.1981); *United States v. Staggs,* 553 F.2d 1073 (7th Cir.1977). Accordingly, those courts approach the Issue of whether a trait is "pertinent" by deciding whether "the character trait in question would make any fact 'of consequence to the determination' of the case more or less probable than it would be without evidence of the trait." *Angelini,* 678 F.2d at 381. *See also* Russell G. Donaldson, Annotation, *When is Evidence of Trait of Accused's Character "Pertinent" for Purposes of Admissibility Under Rule 404(a)(1) of the Federal Rules of Evidence,* 49 A.L.R.Fed. 478 (1980) (word "pertinent" has been held to mean same as "relevant"; admissibility of evidence of accused's character depends on whether character trait shown would be relevant to make more or less

---

3. Rule 404 of the Colorado Rules of Evidence is identical in all respects to Rule 404 of the Federal Rules of Evidence.

probable guilt or innocence of accused as to particular crime charged).

Other courts have expressed the requirement somewhat differently, holding that for character evidence to be "pertinent," "some nexus should exist between the particular evidence offered and the crime charged." *State v. Oliviera*, 534 A.2d 867, 869 (R.I.1987) (evidence is "pertinent" if it would "logically influence the issue"). *See also United States v. Darland*, 626 F.2d 1235 (5th Cir.1980) (evidence of person's character or of trait of his character is admissible if it is evidence of "pertinent trait" in light of elements of offense charged); *Edwards v. United States*, 374 F.2d 24 (10th Cir. 1966) (character trait as to which evidence is admissible must be relevant to trait of character at issue and bear analogy and reference to nature of charge); *State v. Brown*, 592 A.2d 163 (Me.1991) (trait is "pertinent" if existence or nonexistence of trait would be involved in commission or noncommission of particular crime charged); *State v. Collins*, 345 N.C. 170, 478 S.E.2d 191 (1996) (Rule 404(a)(1) provides a defendant may offer character evidence as long as he tailors it to a particular trait that is relevant to an issue in the case; in context of rule, "pertinent" is tantamount to relevant); *State v. Bogle*, 324 N.C. 190, 376 S.E.2d 745 (1989) (to be admissible as "pertinent" trait of character, trait must bear special relationship to or be involved in crime charged).

In whatever manner the requirement is formulated, the "prevailing view is that only pertinent traits—those involved in the offense charged—are provable." John W. Strong, *McCormick on Evidence* § 191, at 813–14 (4th ed.1992) (footnotes omitted), citing the following examples: *United States v. Jackson*, 588 F.2d 1046 (5th Cir.1979) (truthfulness not "pertinent" to narcotics charges); *State v. Howland*, 157 Kan. 11, 138 P.2d 424 (1943) (veracity not "pertinent" to rape charge); *State v. Hortman*, 207 Neb. 393, 299 N.W.2d 187 (1980) (veracity not "pertinent" to charges of assault and abuse of incompetent). *See also* Fed.R.Evid. 404(a) advisory committee's note (1988) ("The limitation to pertinent traits of character, rather than character generally, in paragraphs (1) and (2) is in accordance with the prevailing view."); Lori J. Henkel, Annotation, *Admissibility of Evidence of Pertinent Trait Under Rule 404(a) of the Uniform Rules of Evidence*, 56

A.L.R.4th 402, 409 (1987) ("In determining the admissibility of evidence of an accused's character under Rule 404(a)(1), an initial consideration has been the relationship of the trait to the offense with which the defendant was charged."). Evidence which is not pertinent is inadmissible because Federal Rule of Evidence 404 forbids its introduction as circumstantial evidence of innocence of a charged offense. 29 Am.Jur.2d *Evidence* § 368 (1994).

With few exceptions, federal and state courts have permitted defendants to introduce evidence of their law-abiding character. *See, e.g., Michelson v. United States*, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948); *United States v. Angelini*, 678 F.2d 380 (1st Cir.1982); *United States v. Hewitt*, 634 F.2d 277 (5th Cir.1981); *United States v. Darland*, 626 F.2d 1235 (5th Cir.1980). *See also McCormick on Evidence, supra* (one accused of theft might offer evidence of honesty, while someone accused of murder might show he is peaceable, but not vice versa; a few general traits, like being law-abiding, seem sufficiently relevant to almost any accusation).

However, a different conclusion has been reached with respect to the character trait of truthfulness. For example, in *United States v. Hewitt*, 634 F.2d 277 (5th Cir.1981), the appeals court upheld a district court's decision to exclude proffered evidence of the defendant's character for truth and veracity. The defendant had been charged with unlawful possession or receipt of firearms and had chosen not to testify in his own defense at trial. With respect to the proffered evidence, the court stated that under Federal Rule of Evidence 404(a)(1), "evidence may be offered only of 'pertinent' traits, a term apparently synonymous with 'relevant.' " *Hewitt*, 634 F.2d at 279. The *Hewitt* court concluded exclusion of the character evidence for truthfulness was proper and reasoned:

[N]ot all criminal indictments impugn the defendant's truthfulness. That trait is only relevant in three situations. (1) The offense charged is *crimen falsi; i.e.,* a lie by the defendant is an element of the crime. *See, e.g., Edgington v. United States,* 164 U.S. 361, 363, 17 S.Ct. 72, 73, 41 L.Ed. 467, 470 (1896); *Darland v. United States,* 626 F.2d 1235, 1237 (5th Cir.1980). (2) The defendant has testified on his own behalf and his credibility has been attacked. *See, e.g.,*

*United States v. Jackson,* 588 F.2d 1046, 1055 (5th Cir.1979), *cert. denied,* 442 U.S. 941, 99 S.Ct. 2882, 61 L.Ed.2d 310 (1979).(3) The truth of out-of-court statements made by the defendant has been attacked. *See, e.g., United States v. Lechoco,* 542 F.2d 84 (D.C.Cir.1976).

*Hewitt,* 634 F.2d at 279. The appellate court ruled the district court was correct in excluding the proffered evidence of character for truth and veracity as it did not fall within any of the three categories.

Even in cases where the defendant has testified in his or her own defense at trial, courts have concluded the defendant does not automatically have the right to present evidence of his character for truthfulness under Rule 404(a)(1). In *United States v. Jackson,* 588 F.2d 1046, 1055 (5th Cir.1979), the Fifth Circuit Court of Appeals rejected the defendant's argument that "an accused can always prove the existence of the trait of veracity in his character as a method of supporting his credibility," concluding instead that a defendant who takes the stand at trial does not automatically acquire the right to bolster his or her own credibility by such proof. The court held that "[s]ince evidence of the trait of truthfulness is not pertinent to the criminal charges of conspiracy to distribute heroin or possession of heroin, Rule 404 forbids its introduction as circumstantial evidence of innocence of those crimes." *Jackson,* 588 F.2d at 1055.

The rationale for the general rule expressed in Rule 404(a) precluding a defendant from introducing evidence of his or her character for truthfulness at trial unless truthfulness is a trait pertinent to the offense charged is that such character evidence is, at best, of minimal probative value. *See People v. Miller,* 890 P.2d 84 (Colo.1995). For instance, an accused may have an excellent reputation in the community for truthfulness, but may nonetheless commit assault. *Id.* Moreover, evidence of an accused's reputation in the community for truthfulness may distract the jury from the issues in question and may be time-consuming and confusing. *Id.* Truthfulness is a pertinent trait only if it is involved in the offense charged. *Id.*

An accused has not been permitted to present evidence of his reputation for truth and veracity in a criminal prosecution

where such evidence is not relevant to whether the accused committed the crime in question and where the accused's credibility as a witness is not challenged. 29 Am.Jur.2d *Evidence* § 367 (1994). *See also* 23 C.J.S. *Criminal Law* § 820 (1989) (evidence of accused's reputation for truth and veracity is generally not admissible, except where trait of truthfulness is involved in charge, or has otherwise been attacked).

In his work, *A Comparison of the Federal Rules of Evidence with South Carolina Evidence Law* (5th ed.1993), written prior to South Carolina's adoption of the Rules of Evidence, Professor of Law Emeritus Walter A. Reiser, Jr., notes the text of the federal rule concerning "pertinent trait of his character" is the same as South Carolina law. According to Professor Reiser, "[t]he import of the phrase is that the character trait about which evidence is offered must be the same trait that is involved in the crime charged. For example, a defendant charged with criminal sexual conduct would not be allowed to produce evidence of his good character for honesty in order to prove that he did not commit criminal sexual conduct." *Id.* at 19. *See Daly v. State*, 99 Nev. 564, 665 P.2d 798 (1983) (defendant charged with sexual assault of minor not permitted to proffer evidence concerning character trait of truthfulness as proof of character by accused must be confined to particular traits of character that are relevant to conduct with which accused is charged); *Wiggins v. State*, 778 S.W.2d 877 (Tex.Ct.App.1989) (excluding evidence of defendant's honesty because it was not "pertinent" to charge of aggravated sexual assault; holding "pertinent" trait is one that relates to trait involved in offense charged or defense raised).

Mizell cites *State v. Hallman*, 298 S.C. 172, 379 S.E.2d 115 (1989), a pre-Rule case, in support of his contention the trial judge erred in refusing to allow him to introduce evidence of his reputation for truthfulness and veracity. In *Hallman*, the defendant, who was convicted of first degree criminal sexual conduct with a minor and attempting to commit a lewd act upon a minor, asserted the trial court erred in limiting the testimony of his character witnesses. Hallman testified he did not commit the alleged abuse. He also offered three character witnesses. On direct examination, counsel attempted to

ask the first witness if he knew Hallman's "reputation in the community for morality." The trial judge sustained the solicitor's objection and limited the inquiry to Hallman's "reputation in the community for truth and veracity." Our Supreme Court held the trial court erred in limiting the proffered character trait evidence to reputation for truth and veracity. The Court ruled: "This Court has never limited character trait evidence. Appropriate proof of character is to establish the defendant's general reputation as to the particular trait involved." *Hallman*, 298 S.C. at 175, 379 S.E.2d at 117.

Ultimately, the Court found the error harmless beyond a reasonable doubt. The character witnesses testified Hallman did have a good reputation for truth and veracity. This character evidence supported Hallman's own testimony he did not commit the alleged abuse.

*Hallman* is distinguishable from the case *sub judice*. Unlike Mizell, Hallman testified in his own defense, as well as offering the testimony of three character witnesses. An accused may be permitted to present evidence of his reputation for truth and veracity where the accused's credibility as a witness is challenged. *See* 29 Am.Jur.2d *Evidence* § 367 (1994). Further, *Hallman* was decided prior to the adoption of the South Carolina Rules of Evidence. Moreover, the *Hallman* Court does not directly address the issue of whether character trait evidence relating to truth and veracity is always admissible.

We find no error in the trial court's exclusion of the proffered testimony relating to Mizell's character for truth and veracity. Mizell's reputation for truth and veracity is not a "pertinent trait of character" in light of the crimes with which he was charged. The proffered testimony does not meet the test for admissibility mandated by Rule 404(a)(1), SCRE.

## II. Reply Testimony

Mizell contends the trial court erred in allowing the State to present reply testimony.

Vanessa Mizell, Christina's mother and Mizell's wife, testified in Mizell's defense. According to Mrs. Mizell, Mizell was a loving stepfather to Christina. She believed her daugh-

ter was telling untrue stories about the alleged sexual abuse due to her jealousy over not having her mother's undivided attention. Mrs. Mizell stated she loved Christina, but believed she needed help.

On cross-examination, Mrs. Mizell was asked about her cancellation of appointments set up by the Department of Social Services to see her daughter. Mrs. Mizell denied she "canceled" the appointments and testified she told the DSS employee she had prior commitments with her job and would not be able to come. On redirect, Mrs. Mizell stated she never canceled appointments because she did not want to see her daughter and the scheduled appointments often conflicted with her work.

In reply, the State offered the testimony of Angela Livingston, a Human Services Specialist with the Horry County DSS. Livingston presented a visitation schedule which showed the dates of the scheduled visits and the reasons for cancellation of any visit. For a number of visits, the reason stated was "[c]ancelled due to work obligations." Defense counsel objected to the questioning as improper reply testimony. Defense counsel stated this was a criminal case and not a DSS case concerning Mrs. Mizell's relationship with the caseworker. The State asserted the purpose of the testimony was to show Mrs. Mizell did not take advantage of seeing Christina as often as she could have. The court overruled defense counsel's objection, allowed the reply testimony, and admitted the visitation schedule.

In *State v. Brock*, 130 S.C. 252, 126 S.E. 28 (1925), our Supreme Court discussed the general rule that " 'the cross-examining party is concluded by the answer which a witness gives to a question concerning a collateral matter, and no contradiction will be allowed even for the purpose of impeaching a witness.' " *Brock*, 130 S.C. at 254, 126 S.E. at 28. "The obvious difficulty in the application of this rule is to determine what are such collateral matters, and the nature of that inquiry—involving the relevancy of evidence—is one as to which considerable latitude must of necessity be accorded the trial [c]ourt." *Id. See also State v. Williams*, 263 S.C. 290, 210 S.E.2d 298 (1974) (in view of difficulty in determining what are collateral matters, considerable latitude and discretion should

be allowed trial judge in determining admissibility of testimony impeaching witness). The *Brock* Court further explained:

A generally approved test to determine whether a question is collateral to the issues joined or not has been thus stated:

"Would the cross-examining party be entitled to prove the fact as a part of, and as tending to establish, his case? If he would be allowed to do so, the matter is not collateral; but, if he would not be allowed to do so, it is collateral. Collateral matters, in this sense, are such as afford no reasonable inference as to the principal matter in dispute."

*Brock*, 130 S.C. at 254–55, 126 S.E. at 28–29.

However, recognizing this test for collateralness is not always sufficient, the Supreme Court in *State v. Galloway*, 263 S.C. 585, 211 S.E.2d 885 (1975), opined the question is often one of relevance. The Court enunciated: " 'The general rule is, that the answer of a witness, to an immaterial question, cannot be contradicted to impeach his credit; but if the question is in any wise material to the issue, his answer can be contradicted.' " *Galloway*, 263 S.C. at 593, 211 S.E.2d at 888.

■ Furthermore, the Court of Appeals has recognized the importance of the relevance of the proffered evidence. In *Aakjer v. Spagnoli*, 291 S.C. 165, 352 S.E.2d 503 (Ct.App. 1987), this Court noted a witness may be contradicted for the purposes of impeachment only as to matters relevant to the issue. The sole object of the rule against impeachment of witnesses on collateral matters is to prevent confusion of issues and unfair surprise. *State v. Williams*, 263 S.C. 290, 210 S.E.2d 298 (1974). Impeachment of a witness's credibility by asking questions not relevant to the case in chief with a view of obtaining contradictory or inconsistent statements is limited to cross-examination of the witness sought to be impeached. *Martin v. Dunlap*, 266 S.C. 230, 222 S.E.2d 8 (1976); *Aakjer, supra*. This right does not extend to putting another witness on the stand to contradict him as to such collateral matters. *Id.*

Initially, we question whether there was any impeachment involved in the reply testimony. While Mrs. Mizell did not agree with the use of the term "canceled," she admitted on

cross-examination she missed scheduled visits due to work conflicts. This was the substance of the reply testimony. In any event, Mrs. Mizell's failure to meet scheduled visits was not directly relevant to the issue of Mizell's guilt or innocence of the crimes charged. To that extent, the reply testimony was collateral.

■ In order to obtain a new trial based upon the erroneous admission of evidence, the appellant must demonstrate both error and prejudice. *Howard v. State Farm Mut. Auto., Ins. Co.*, 316 S.C. 445, 450 S.E.2d 582 (1994); *Watts v. Bell Oil Co.*, 266 S.C. 61, 221 S.E.2d 529 (1976). *See also State v. Greene*, 255 S.C. 548, 180 S.E.2d 179 (1971) (error without prejudice is not basis for granting new trial); *State v. Homewood*, 241 S.C. 231, 128 S.E.2d 98 (1962) (admissibility of testimony is largely within discretion of trial judge and his exercise thereof will not be disturbed on appeal unless there is manifest abuse of discretion or commission of legal error, which must be accompanied by probable prejudice to other party in order to entitle him to new trial for admission of questioned evidence).

■ We find Mizell has suffered no prejudice warranting a new trial. " 'As we have stressed on more than one occasion, the Constitution entitles a criminal defendant to a fair trial, not a perfect one.' " *State v. Mitchell*, 330 S.C. 189, 199, 498 S.E.2d 642, 647–48 (1998) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674, 684 (1986)). While the reply evidence may have raised the suggestion Mrs. Mizell could have made a greater effort to visit her daughter, there is no merit to Mizell's argument the reply evidence raised an inference his wife was in complicity with him in the commission of the alleged criminal acts.

## CONCLUSION

We hold the trial court did not err in refusing to allow Mizell to introduce evidence of his reputation for truthfulness and veracity. Rule 404(a)(1), SCRE, prohibits the admissibility of evidence concerning Mizell's reputation for truth and veracity because such evidence is not pertinent to the issue whether Mizell committed the crimes in question. Further-

more, the trial court did not err in allowing the State to present reply testimony. Accordingly, Mizell's conviction is **AFFIRMED.**

HEARN and HOWARD, JJ., concur.