**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

John Fitzgerald Anderson, Appellant.

Appellate Case No. 2018-001596

───────────────

Appeal From Greenwood County
Jocelyn Newman, Circuit Court Judge

───────────────

Unpublished Opinion No. 2021-UP-340
Heard June 7, 2021 – Filed September 29, 2021

───────────────

**AFFIRMED**

───────────────

Mary Abigail Young Bechtol, of Mount Pleasant, and Chief Appellate Defender Robert Michael Dudek, of Columbia, both for Appellant.

Attorney General Alan McCrory Wilson and Assistant Attorney General Mark Reynolds Farthing, both of Columbia; and Solicitor David Matthew Stumbo, of Greenwood, all for Respondent.

───────────────

**PER CURIAM:** John Fitzgerald Anderson appeals his convictions and sentences for exploitation of a vulnerable adult, unlawful entry on another person's lands, and

receiving stolen goods.  On appeal, Anderson argues the trial court (1) erred in refusing to charge the jury on good character and (2) erred in allowing hearsay testimony from Deputy Ronnie Powell.  We affirm.

In spring of 2017, Dr. Robin Stone diagnosed Bertha Robinson, a childless widow, with dementia.   Following Robinson's diagnosis, her nephew, Anthony Gilmore, traveled to South Carolina in May 2017 to further evaluate Robinson's condition, set up power of attorney, and hire caretakers to look after Robinson.  Upon arrival, Gilmore discovered Robinson's bank accounts were inexplicably depleted and believed a television, jewelry, and a Jaguar key were missing from her home.  As a result, he filed a report with the Greenwood County Sheriff's Office and named Anderson, Robinson's neighbor, as a potential suspect.  The sheriff's office assigned Deputy Powell to investigate the report.

On June 28, 2017, Gilmore observed Anderson at Robinson's front door through security cameras installed at Robinson's home; on multiple occasions, Deputy Powell and Robinson's caretakers had informed Anderson he was not permitted on Robinson's property or in her residence.  When Robinson's caretakers arrived at her home later that morning, they could not locate her and contacted Deputy Powell, who initiated a search for Robinson.  Shortly thereafter, Gilmore received an alert that Robinson had withdrawn $300 from her bank account and relayed that information to Deputy Powell.  Eventually, deputies spotted Anderson's Hyundai leaving a gas station in the vicinity of the bank, and a chase ensued.  Anderson crashed his vehicle, and authorities arrested him.  Deputies located Robinson in the front passenger seat and found a Hyundai first-aid kit in the vehicle.  Inside the first-aid kit, deputies discovered a Jaguar key, another set of keys, and some jewelry.  Deputies also found $249 in Anderson's pocket.

A grand jury indicted Anderson for exploitation of a vulnerable adult, unlawful entry on another person's lands, and receiving stolen goods.  At Anderson's trial, the State submitted evidence showing (1) Robinson's doctor had diagnosed her with dementia; (2) Anderson had attempted to enter Robinson's residence, despite being told he was unwelcome and Gilmore posting no trespassing signs on the property; and (3) Anderson had attempted to gain information regarding Robinson's bank account, and his accompanying Robinson to her bank prompted the bank to contact its financial crimes unit.  The State also introduced into evidence the items discovered in Anderson's vehicle's first-aid kit.  The jury found Anderson guilty on all charges, and the trial court sentenced him to ten years' imprisonment—thirty days' imprisonment on the charge of unlawful entry on another's lands after notice, five years' imprisonment on the charge of exploitation

of a vulnerable adult, and ten years' imprisonment on the charge of receiving stolen goods, all to run concurrently.

1. The trial court did not err in refusing to charge the jury on good character because Anderson did not present evidence of his good character during his trial. At trial, Whitni Jones, Anderson's ex-girlfriend, testified on behalf of the State. At the outset of questioning, the State asked Jones how she met Anderson. Jones stated, "I met him a couple years ago at a friend's house and he was just there and I mean I was talking to him and he seemed like a good person. I mean, and then a couple of years later we just met back up on Facebook." Jones's testimony during the State's case-in-chief prompted Anderson to request a jury charge on his good character. The trial court declined to charge the jury on good character evidence. The trial court did not err because Jones's testimony was not in the form of reputation or opinion testimony, as required by Rule 405, SCRE. *See State v. Hill*, 315 S.C. 260, 262, 433 S.E.2d 848, 849 (1993) ("The law to be charged to the jury is determined by the evidence presented at trial."); *State v. Shuler*, 344 S.C. 604, 632, 545 S.E.2d 805, 819 (2001) ("If there is any evidence to support a charge, the trial [court] should grant the request."); *State v. Brown*, 362 S.C. 258, 262, 607 S.E.2d 93, 95 (Ct. App. 2004) ("To warrant reversal, a trial [court's] refusal to give a requested jury charge must be both erroneous and prejudicial to the defendant."); Rule 404(a)(1), SCRE (allowing "[e]vidence of a pertinent character trait" to be offered by the defendant); *State v. Mizell*, 332 S.C. 273, 277, 504 S.E.2d 338, 340 (Ct. App. 1998) ("Rule 404(a)(1) permits such evidence when a defendant demonstrates he or she possesses a character trait that relates to the alleged offense—a 'pertinent' trait of his or her character."); Rule 405(a), SCRE ("In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion.").

2. The trial court did not err in allowing alleged hearsay testimony from Deputy Powell because the testimony was not hearsay. Deputy Powell testified the origin of the investigation stemmed from Gilmore's report that Robinson's property had been stolen. Deputy Powell added that Gilmore's report identified Anderson as a possible suspect for the missing property. Anderson objected to Deputy Powell's testimony and asserted both statements were inadmissible hearsay. The trial court did not abuse its discretion in overruling the objections as neither statement was hearsay because Deputy Powell was explaining his actions in initiating the investigation and how Anderson came to be a suspect in the investigation. *See State v. Gaster*, 349 S.C. 545, 557, 564 S.E.2d 87, 93 (2002) ("The admission of evidence is within the discretion of the trial court and will not be reversed absent

an abuse of discretion."); *Clark v. Cantrell*, 339 S.C. 369, 389, 529 S.E.2d 528, 539 (2000) ("An abuse of discretion occurs when the trial court's ruling is based on an error of law or, when grounded in factual conclusions, is without evidentiary support."); *State v. Brown*, 317 S.C. 55, 63, 451 S.E.2d 888, 893-94 (1994) (holding an officer's testimony about "receiving [civilian] complaints" that led to the surveillance of the defendant's apartment was not hearsay); *State v. Kirby*, 325 S.C. 390, 396, 481 S.E.2d 150, 153 (Ct. App. 1996) ("We find [the officer's] testimony concerning the dispatcher's announcement was not offered for the truth of the matter asserted, but rather, served only to explain the reason for the initiation of police surveillance of the vehicle in question."); *State v. Thompson*, 352 S.C. 552, 559, 575 S.E.2d 77, 81 (Ct. App. 2003) ("[T]he officers' testimony regarding statements made by the bystander were not entered for their truth but rather to explain and outline the officers' investigation and their reasons for going to the [defendant's] home.").

**AFFIRMED.**

**KONDUROS, GEATHERS, and MCDONALD, JJ., concur.**